C. P. HERNDON *v.* RICHARD HARRISSON et al., Admr., &c.

1. DAMAGES: MEASURE OF, FOR BREACH OF WARRANTY OF TITLE TO LAND.—As a general rule, the measure of damages which the vendee is entitled to recover, for a breach of warranty of title to land, or for the failure of the vendor to convey a title according to the stipulations of his title-bond, is the amount of the purchase-money paid and interest.

2. VENDOR AND VENDEE: VENDEE MAY TENDER NOTES OF VENDOR FOR PURCHASE-MONEY, IN SATISFACTION OF DAMAGES FOR FAILURE TO MAKE TITLE.—Where the vendee in a title-bond, upon a tender of the purchase-money and a demand for a deed, which is refused, elects to cancel the contract, he can, as a general rule, recover nothing from the vendor if the latter offer to return the notes for the purchase-money before suit is brought, and also bring them into court, at the trial, and tender them in satisfaction of the plaintiff's demand.

3. SAME: ADMINISTRATOR OF VENDOR A PROPER PARTY FROM WHOM TO DEMAND A DEED.—It seems that the administrator, and not the heir, of a deceased vendor who has executed a title-bond, is the proper party from whom the vendee should demand a deed, upon a tender of the purchase-money. *Sed quære.*

IN error from the Circuit Court of Monroe county. Hon. William Cothran, judge.

This was an action by the plaintiff in error, against the defendant, as administrator of D. W. Ragsdale, deceased, to recover damages for a breach of the condition of a bond executed by Ragsdale, by which he obligated himself to make a warranty deed in fee simple to plaintiff, to a certain lot of land, upon the payment of the purchase-money.

The declaration, after setting out the contract, averred, that the plaintiff had tendered all the purchase-money, and the interest, to the administrator, and demanded that a deed should be made in accordance with the title-bond, which was refused.

The plaintiff also paid the money in court, at the time he filed his declaration.

The defendants demurred to the declaration, and, upon their demurrer being overruled, they answered, denying generally all the allegations thereof.

Upon this issue, the cause was submitted to the circuit judge, upon an agreed state of facts,—each party reserving the right to appeal, or sue out a writ of error.

The agreed state of facts was as follows:—

" That the notes for the purchase-money, mentioned in the bond for title, were executed by plaintiff to said decedent, according to the bond. That this bond is as set forth in the complaint, and that on the 10th day of June, A.D. 1853, plaintiff tendered to defendants the whole of the purchase-money secured by said notes, and demanded a deed according to the bond, which was refused. That the purchase-money aforesaid is brought into court, being the sum of $556 66. The value of the land, with the improvements put on it by the plaintiff, at the time of the tender, was $960. That the plaintiff has been in possession and use of said land from 13th October, 1845, to 10th June, 1853; that there have been no rents charged against plaintiff by any person for the use of said land, and no liability existing therefor. That there were taxes due by decedent on the land before the contract, which plaintiff paid, and which defendants offered to refund before this suit was brought. That at the time of said contract of sale of said land, by decedent to plaintiff, the decedent honestly believed he had title to the land. That plaintiff abandoned the possession of said land before his tender as aforesaid. That defendants have always been ready and willing to deliver up

said notes, and now bring them into court, and tender them to the plaintiff, for cancellation, or for any other disposition he may see fit to make of them."

The circuit judge, being of opinion that the plaintiff was not entitled to recover, rendered judgment for the defendant, and the plaintiff sued out this writ of error.

*John B. Sale,* for plaintiff in error.

On the 13th day of October, 1845, Daniel W. Ragsdale sold to the plaintiff, C. P. Herndon, a certain tract of land in Pontotoc county, for a price payable in three equal instalments secured by note, and thereupon executed to the vendee a bond conditioned to make him a " warrantee deed in fee," upon payment of the last instalment. Herndon went into possession, and retained it until June 10th, 1853, during which time Ragsdale died, and the defendant qualified as his administrator.

On 10th June, 1853, Herndon abandoned possession in favor of a superior adverse title, and at that date also applied to the administrators (who held his notes as such) for a deed to be executed by the proper parties, whoever they might be, conveying a valid title in fee to the land, at the same time tendering to them all the purchase-money and interest to date. They refused to receive the money, and to cause the conveyance to be made according to the bond. After waiting three months thereafter, Herndon, on 10th September, 1853, instituted suit at law against Ragsdale's administrators on the bond, to recover damages sustained by the breach of the condition in refusing to cause a conveyance to be executed, and, with his complaint, deposited all the money in court.

At the trial term of court, in June, 1857, defendants offered to return to plaintiff his notes for the purchase-money, which offer was declined.

At the trial, the case was submitted to the circuit judge upon an agreed statement of facts, who thereupon gave judgment for the defendants, from which the plaintiff prosecutes a writ of error to the High Court.

A question raised on argument below as to the proper criterion of damages in such cases, need not here be noticed, as the decision of the circuit judge was adverse to plaintiff's right to recover at all

in the suit; he being of opinion that the testimony did not show such a demand of a deed, before bringing the suit, as was requisite to put defendants in default; and holding further, that such demand where the vendor is dead, should be by petition to the Probate Court under the statute, praying that the administrators be decreed to convey. Hutch. 671, § 114.

I think it can be plainly shown that the judgment and opinion are erroneous, and that, from an attentive consideration of the circumstances surrounding the plaintiff's position, and the reason of the rules influencing his rights in the premises, it will appear, in the first place, that those circumstances excused any demand whatever; and in the next, that if a previous demand should be held to be necessary, that which was made by him was the proper one.

The vendor has failed to comply with his covenant to convey a title in fee with warranty, &c., although the vendee was ready to perform on his part. There were then three remedies open to the latter, to each of which he was equally entitled, viz.: 1. To cancel the contract. 2. To seek in equity a specific performance. And 3. To sue at law on the title-bond for damages. Two of these, at least, requiring certain preliminary steps to put the other party in default.

The plaintiff had the right, as we have said, to elect either. He chose the last.

It had been decided upon admitted authority, in *Stockton* v. *George*, 7 How. Miss. 172, *Hudson* v. *Watson*, 26 Miss. 357, and *Standifer* v. *Davis*, 13 S. & M. 48, that before proceeding at law upon the bond for damages, the vendee must tender the money (if unpaid) and demand a deed. Then, in this case, to whom must the tender, and of whom must the demand be made? It evidently lay between the heirs and the administrators. That the former were not the proper persons to resort to, is obvious for several reasons.

1. They might be (and in this case most of them actually were) minors, and have of themselves no power to convey. True, the vendee might apply to a court of chancery, which, by its decree, could vest their title (if they have a good title) in a commissioner, and direct him to convey; but that could only occur in a proceeding there to enforce a specific performance, which would be nugatory and ineffectual, if the vendor's own title should prove radically

defective ; in addition to which, the vendee has the right to elect either of the three remedies above enumerated, and could not be thus compelled to forego the preferred one.

2. The heirs, whether minor or adult, had no authority to receive the money, and give an acquittance therefor. Being personalty, it was due to the administrators, who also held the notes.

3. And whether the money were still due or had already been paid, the effect of a failure to comply with the demand, was directly to furnish a cause of action, not against the heirs, but against the administrators, who should themselves be clothed in some way with the power to avert it, by complying or causing a compliance. The heirs frequently, as such, have not the slightest interest in the proceeding. The land in question may be the only realty pertaining to their ancestor ; and that having been contracted away in his lifetime, they remain merely dry trustees of the legal title ; and if, in addition to this, the estate be insolvent, they are entirely without any concern in the matter whatever.

Not so with the administrators. They are the parties to be sued for the breach of covenant, and the assets in their hands must respond to a recovery. They hold the notes, the payment of which to the proper person is a necessary part of the transaction, and the collection of which is part of their official duty. And whether that collection transpire in a proceeding initiated by themselves or the maker, they must be prepared to perform, or *cause performance*, of that act which is an indispensable *condition precedent* to the collection.

The law does not devolve upon them a duty, and hold them and *their sureties* personally liable for its neglect, without also affording them adequate power and means for its performance. ,

Contracts of this kind have, in Alabama and elsewhere (and at one time in this State), been likened to equitable mortgages, the vendee being mortgagor, the vendor mortgagee, the land the mortgaged premises, and the purchase-money the mortgage debt. In this case, the analogy is a good one, and aptly illustrates the relative rights and remedies of the parties upon the question which I am considering. Now it is well known that the administrator of the mortgagee takes the mortgage debt as assets, and with it the mortgage itself, as an incident and security to the debt. And gene-

rally, in all proceedings relating to the mortgage transaction, he alone is plaintiff or defendant, as the case may be, without noticing the heir. *Vide* 13 S. & M. 373. For every reason, such also is the case in the present instance.

Reverse the positions of the parties here, and let the administrators seek to coerce from the vendee the payment of the notes. He would be compelled at the outset to make his own part precedent, and either perform his intestate's covenant or offer to do so, by tendering a deed conveying the valid fee simple title, according to the bond.

If this be so (and it will not be denied), why may he not be applied to by the vendee when occupying, as in this case, the position of plaintiff, to do the same thing in discharge of the same covenant of his intestate ? But it may be asked, how is he to comply with the stipulations of the bond, when the title is neither vested in, nor can be voluntarily conveyed by him ? The answer is easy where he is himself the actor, and seeking to collect the purchase-money. He has only to choose another forum than a court of law, make the heirs co-defendant with the purchaser, and in the bill tender him their title, to be conveyed, if necessary, through a commissioner. And if, in deraigning the title of his intestate, it appears that a perfect one cannot be conveyed, he may offer to buy off with the assets of the estate any outstanding incumbrance or paramount title, provided these be practicable. Otherwise he must, of course, fail in collecting the money, as he cannot compel the purchaser to accept a deed regular upon its face merely, unless it also appear to communicate such title as is bargained for.

We will presently see that the same is the correct course where the demand for a title deed is made upon him by the purchaser in capacity of plaintiff. It is true that in the case of *Fuller* v. *Hubbard et al. Admrs.* (6 Cow. 17), the court speak incidentally of the demand being necessary to be made upon the heirs ; but the remark is merely incidental, and was not intended to contradistinguish them from the administrators as being the proper parties on whom it should be made. They were considering an entirely different question, this one not having been raised in the case, or noticed in the syllabus. It, therefore, cannot have the dignity of a decided point; and if it had, we respectfully submit whether the decision

would be consonant to reason.    I think I have abundantly shown that it would not.

It then having been thus seen that the administrators, and not the heirs, were the parties to whom the tender and application should be made, the next question is, how the plaintiff should have proceeded in making the demand, and what course should thereupon have been pursued by the administrators ?

1. The mode which most commended itself to the circuit judge, was that provided by the statute.    Hutch. 671, § 114.

But it requires very slight attention to the necessities of the subject to perceive that this mode is entirely inadequate to meet them in all cases, and especially in the one at bar.

The act provides a summary substitute for the equitable remedy of a bill for specific performance ; but only in cases where the intestate's title is clear and satisfactory of itself.   The Probate Court would exhaust its jurisdiction by merely compelling the administrators to execute a deed, good in form only ; and the latter would fully obey the decree by executing such a deed.

The power of the Probate Court is not coextensive with that of a court of equity in similar cases, to inspect and decide upon the titles, and, if necessary, direct the administrator to procure them, in order to an effectual conveyance.

The statute is clearly not mandatory and exclusive, but directly the contrary.    It is only permissive and remedial, affording a cumulative resort in cases where its operation would be appropriate and beneficial.    Can it, for a moment, be supposed that the vendee cannot, as formerly, file a bill in equity for specific performance merely because of the vendor's death and the existence of the statutory remedy ?

In this instance, the operation of the act, instead of being appropriate and beneficial, might (would) have been disastrous in the extreme, and utterly destructive of everything to be desired by the plaintiff under his contract.

The title of the intestate himself may have been (and actually was) immersed in litigation, and impossible to be made clear without being vindicated by a judgment in his favor, or the adverse claims or incumbrances being bought in by him.    A simple conveyance by the administrators under these circumstances, would not only

have merged the title-bond, and deprived the obligee of all protection under it, but would also have devolved upon him all the expense and risk of litigation about the title, without even the security of a warranty in his deed. Of course, then, it was not to be thought of. There still remained to him the precise mode of proceeding which would have been proper before the act was passed. The statute being only cumulative, there was nothing to prevent his adopting that mode. What was it?

In New York it has been decided (in *Fuller* v. *Hubbard et al.*, 6 Cow. 13; *Connelly et al.* v. *Pierce*, 7 Wend. 129, *et passim*) as to the *modus procedendi* between living vendor and vendee, that the latter must first apply to the other for an abstract of his title, that it may be submitted to the vendee's counsel, in order that he may inspect and pass upon the title. The vendor is then allowed a reasonable time within which to consult his counsel, and have the conveyance prepared if it has not been already done by the vendee, which he may do.

After the lapse of such reasonable time, if on a second demand a satisfactory conveyance is not made, the vendor is in default, and the bond may be put in suit. In Mississippi the same principles apply, and the same details, with slight modification. 13 S. & M. 48, *supra*; *Hudson* v. *Watson*, 26 Miss. R. 357. The course, then, is plain. If the vendor be living, apply to him, tender the money, demand a deed; and, if he do not refuse to accede, make a second demand, after a reasonable time, such as existing circumstances indicate. He is entitled to it, either that he may have the deed prepared himself, or to consult his counsel on the one (if any) submitted by the vendee. What is a "reasonable time" must be determined from all the circumstances connected with the transaction. *Hudson* v. *Watson*, 26 Miss., *supra*, 361. But if he be dead, then in like manner apply to his executor or administrator (the holder of the notes), tender the money, and demand that an effectual conveyance from the proper person be furnished by him.

He will be entitled to a reasonable time, under existing circumstances, to comply. What those circumstances are he should disclose to the applicant, that he may be apprised of the delay which they require, and co-operate, if need be. If the state of the title be satisfactory, and the heirs all of age, and near at hand, and will-

ing to convey, the requisite delay will not be long. If any of them be at a distance, it must be longer. But if the titles are yet to be cleared up or strengthened, and the heirs be minors, or unwilling to convey, he will (and especially if there are minors) reply to the demand by stating the facts, exhibiting a satisfactory chain of title (*in posse* at least), and proposing at his own expense as administrator forthwith to institute proceedings in equity to procure and vest in the vendee a perfect title. The vendee cannot refuse to acquiesce in this, and allow the time necessary under the circumstances, if a good title be apparent in the intestate, either *in esse* or *in posse.*

But if no such existing or possible title appear, or the administrators refuse to do or propose as above suggested (as the proof shows they did refuse to do in this case), then the covenant of the bond is broken, and it may immediately be put in suit. This was done in the present case, three months after the refusal, a second demand being unnecessary after a refusal on the first.

An easy test of the propriety of this *modus procedendi*, and a conclusive proof that the administrators are clothed with the power to procure a conveyance of the title for the purpose of complying with the covenant of the bond, is the following, viz. : It is their manifest duty to protect the estate from a liability to a recovery by the vendee, for damages sustained by a breach of the condition of the bond, and to place themselves in position to collect the purchase-money at maturity of the notes. Now, suppose that in anticipation of such approaching liability, and in order to avoid it, as well as to collect the money, they desire to prepare themselves beforehand for the purpose, how will they proceed to do so ? Assuredly by bill in equity against heirs and purchaser, as already mentioned, and necessarily so if the heirs are minors or unwilling to convey. Then, if this be so, and it undoubtedly is, how is it possible for the case to be altered by the fact of the vendee taking action on the contract for the same purpose, instead of themselves ? If they have the power to take the course suggested, and the only objection to it is the delay involved, that objection belongs to the vendee alone, and is waived by his applying to the administrators instead of the heirs, even if a demand on the latter were proper. It seems to me that no proposition can be plainer.

But, aside from the question of the proper mode of making a demand where one is necessary, we maintain that under the peculiar circumstances of this case none was requisite. In the case of *Standifer* v. *Davis* (13 S. & M. 52), the court say, "There may be cases which would excuse the want of a demand, as absence of the party, or a wilful keeping out of the way to avoid it." A reference to the reason of the rule which prescribes a tender and demand, will show the justice of the exceptions engrafted upon it. The reciprocal and interchangeable character of the contract makes it necessary that the vendee, when seeking to enforce it in his own favor, should make his own part of it precedent, and also then give a reasonable opportunity for the other to perform, by demanding performance before proceeding to enforce. But where the execution of this duty by the vendee involves extraordinary difficulty or delay of his rights, the reason ceases and the exception obtains. So also the reason fails in cases where it is manifest that a demand would be utterly nugatory, as where the vendor himself has no title. No one will contend that the two instances mentioned in the case referred to constitute the only occasions for introducing the exception and excusing the want of demand. If absence of the vendor be a good excuse, it is difficult to imagine one more plausible or more productive of unnecessary difficulty and delay than the death of the vendor, the minority of his heirs, and his want of title, or either of the three singly.

If ever a case called for a dispensing of the rule, and applying the exception, it is the one at bar.

If these views be correct, as I humbly maintain, they establish the two propositions with which I set out, viz.: First, (as I have last attempted to show), that the circumstances shown in proof afford occasion to engraft exceptions upon the rule, and dispense with a demand upon either the administrators or heirs of the vendor; but that, secondly, disregarding the circumstances of excuse, and disallowing any exception, the course adopted by the plaintiff in this case fulfilled the most rigid requirements of law in proceeding at law upon the title-bond of a deceased vendor.

Should the court concur with me upon either proposition, I respectfully ask that the judgment of the Circuit Court be reversed; and, as the agreement of facts submits the entire case for the de-

cision of the court, that such further final judgment be here rendered as should have been given by the Circuit Court. Rev. Code, 563, Art. II.

*Harrisson* and *Whitfield*, for defendants in error.

This is a suit upon a bond for title, executed by Ragsdale, in his lifetime, to the plaintiff, Herndon.

Several years elapsed after the execution of the bond and the maturity of the notes, before the death of Ragsdale. In his lifetime, Herndon never thought of tendering the money, or of demanding a title; but waited some time after administration was granted on his estate, then came forward, tendered the purchase-money to one of the administrators, and demanded a deed. This the administrators could not make, and tendered him his notes for the land, and also produced them on the trial, in the court below, to be cancelled. It is not pretended that there was any fraud on the part of the vendor, or his representatives.

Under these facts, has the plaintiff a right to recover anything in this suit? The demand of a deed accompanied by a tender of the purchase-money was indispensable to the maintenance of the action. The demand must be made upon a proper person, in order to put the obligor in default. 27 Miss. R. 498, 837; 7 S. & M. Rep. 340; 10 Ib. 560; 13 Ib. 678; 9 Ib. 596.

What had the administrators to do with the land? Certainly they had no power to make the deed; why then demand it of them? Their failure to do that which the law had forbidden, can never constitute the foundation of a cause of action.

The statute points out the remedy in such case. It is by petition or bill in the Probate Court, tendering the purchase-money and interest, that they have the power conferred, and are enabled to make a deed, if, upon the hearing, the court should determine they ought to do it. Hutch. Code, 671; 14 Ala. Rep. 585.

Then the administrators are not in default, and the demand on them amounted to nothing. The plaintiff might as well have demanded title of the man in the moon.

The demand was not made, nor was the money tendered in the lifetime of Ragsdale; so that the plaintiff has put nobody in default;

and all we could do under the circumstances, was to tender the notes for the purchase-money.   This the administrators did, and still do.

There was no cause of action against Ragsdale in his lifetime, for the deed was not demanded of him ; and as the administrators could not make the deed, the demand on them could not work a forfeiture of the bond.

But what is the measure of damages in this case, supposing the bond to have been forfeited?   It is admitted that there was no fraud in the transaction upon the part of Ragsdale, but that he believed, when he sold it, that the land was his own, and the sale fell through in consequence of a defect of title.

Under these circumstances, it is submitted that the purchase-money and interest are all the plaintiff is entitled to, and as he has never paid one cent, and has the notes for the same at his order, he is properly out of court.

Upon this point, there is some conflict of authority, as there was in the case of the sale of a chattel, until settled by this court in *Noel et al.* v. *Wheatley*, 30 Miss. Rep. 191.

The reasoning in that case applies with all its force to the one now before the court.

Chancellor Kent, in 3 Caine's Cases, 116, says "the safest general rule is to limit the recovery as much as possible to an indemnity for the actual injury sustained, without regard to the profits, which the plaintiff has failed to make."   So upon a contract for the purchase of land ; if the title proves bad, and the vendor is without fraud incapable of making a good one, I do not think the purchaser can be entitled to any damages for the fancied goodness of the bargain which he supposes he has lost.   The rule is different, of course, where the vendor is guilty of a fraud in not making title. No prudent man would venture to sell his property, if there was no limit to the recovery of damages, upon the failure of his title.

With what peculiar force all this applies to the present case.

The vendee refuses to pay the purchase-money for years after its maturity, waiting the increased value of the property and the death of the vendor ; finally, tenders the money, and demands a deed from the administrators, and because the vendor was honestly mistaken in his title and it fails, he now seeks to recover the value of the property at the date of the tender.   Is not this allowing a

man to take advantage of his own wrong ?    See *Peters* v. *McKeon*, 4 Denio Rep. 549, and authorities cited ; *Baldwin* v. *Munn*, 2 Wend. Rep. 403, and authorities.    These cases contain elaborate arguments, and review some conflicting authorities, and are precisely in point.    See also 6 Barbour Rep. (N. Y.) 646 ; *Allen* v. *Anderson*, 2 Bibb. 415 ; Sedgwick on Damages, 183, 184, 185, collects a number of cases.

In conclusion, we submit that the plaintiff has not been damaged one cent.    He has not paid out anything, and sets up his notes, which, under the law, is all that he can justly claim.

*W. F. Dowd*, on same side.

1. On the state of facts disclosed, the judgment of the Circuit Court must stand.    Herndon, to maintain this action, must show that Ragsdale had no title to the land, and that he tendered all the purchase-money, and demanded a deed in the lifetime of Ragsdale ; or, that Ragsdale died before the maturity of the last payment, and that he, Herndon, was evicted by legal process, or retired from the possession of the land before a paramount title hostilely asserted. There is no pretence that Ragsdale had no title.    Neither he nor his administrators ever had been put in default by Herndon.    *Hill* v. *Samuel et al.*, 2 George's (31 Miss. R.) 311 ; *Standifer* v. *Davis*, 13 S. & M. 48 ; *Johnson* v. *Beard*, 7 S. & M. 214 ; *Hudson* v. *Watson*, 26 Miss. R. 357.

No demand was ever made of Ragsdale of a deed.    A mere verbal demand of a deed from the administrators did not put them in default.    A petition must have been filed in the Probate Court. Hutch. Code.

2. The whole of the very ingenious argument of counsel may be admitted without affecting the validity of the judgment of the Circuit Court.

If Herndon had paid all the purchase-money, and Ragsdale's title had been worthless, what would have been the measure of damages ?    The purchase-money and interest, and not the increased value of the land or the improvements put thereon.    *Phipps* v. *Torpley*, 31 Miss. (2 George's) R. 433 ; Rawle on Covenants of Title, 480.

Herndon has, therefore, sustained no damage,—no liability for rents,—no suit for possession of the land.    On the contrary, he has

held possession of the land long enough to bar all actions for its recovery, and has not paid one dime of the purchase-money. So far as the administrators had power, the contract was mutually rescinded, and the parties were placed in the same position as before the sale, except that Herndon has enjoyed the use of the land eight years without rent.

I think the case of *Laud* v. *Wallace*, 31 Miss. (2 George's) R. is conclusive on this point.

FISHER, J., delivered the opinion of the court.

The plaintiff below brought this action in the Circuit Court of Monroe county, to recover damages occasioned by the breach of a bond executed by the intestate, binding himself to make to the plaintiff a deed, in fee simple, to a certain tract of land, upon payment of the purchase-money. The case was tried below upon an agreed state of facts; and, according to our understanding, the only question was, what should be the measure of damages. The plaintiff, before he commenced his suit, tendered to the administrators of the vendor, the full amount of the purchase-money, and all interest, and demanded a deed, which being refused, he surrendered the possession of the land, but to whom does not appear, and thereupon commenced this suit. The defendants brought into court the notes given for the purchase-money, and tendered them to the plaintiff. It was admitted that the land, at the time of the tender of the purchase-money, was worth about $300 more than the purchase-money. The court, upon this state of case, rendered a judgment for the defendants; which means that the plaintiff should accept the notes by him executed, in full discharge of the damages which he had sustained by reason of the failure to make title according to the condition of the bond. This was according to the settled rule, that the purchase-money and interest shall be the measure of damages in such case, where no special circumstances exist, making the application of a different rule necessary.

No special circumstances are shown to exist in this case, and consequently we perceive no necessity for departing from the general rule.

It further appeared that the defendants had, at all times, been ready and willing to deliver up the notes to the plaintiff; and while

it does not positively appear that such an offer was made, yet such an inference may be indulged. Under this state of case, there was no necessity for this suit; and, consequently, we are compelled to hold that the court below committed no error.

We deem it unnecessary to decide the other points so elaborately argued by counsel. It would seem, upon principle, that the demand upon the administrators, who held the notes, for a deed, ought to be sufficient. The vendee ought only to be required to tender performance to the parties holding the notes, and who could demand performance of him. He might not know the heirs; and, even if he did, they could not ordinarily receive the purchase-money on executing the deed. But these questions are only noticed for the purpose of stating that we do not consider them necessary to a decision of the case. The agreed state of facts presupposes that a demand for a deed was properly made of the administrators; and, as remarked at the outset, the question was, whether the purchase-money and interest should be the measure of damages, and whether these damages should be liquidated by the plaintiff's receiving back his own notes for the purchase-money. These questions having been decided for the defendants, the judgment must be affirmed.