[No. 220. Decided January 20, 1892.]

## JAMES MORGAN, WM. C. WILLIAMS, W. S. MANN AND W. F. HAYS, *Respondents*, v. WILLIAM BELL, *Appellant*.

VENUE—SPECIFIC PERFORMANCE—EQUITABLE JURISDICTION—IMPOSSIBILITY OF PERFORMANCE—MEASURE OF DAMAGES.

An action for the specific performance of a contract to convey land is a trans tory one, and need not be brought in the country where the land is situated. (HOYT, J., dissents.)

In an action for specific performance, where defendant, without any fault of his own, is legally incapacitated from performing the contract, and this fact is known to plaintiffs when they commence suit, the court has no jurisdiction of the case; and having no jurisdiction to decree performance, it can render no alternative judgment for damages.

In such a case, where defendant did not object to the jurisdiction at the trial, and treats the cause as an equitable one, he cannot raise the objection on appeal.

An answer in an action to enforce a contract for the conveyance of land states an equitable defense when it alleges that the agreement was entered into at the solicitation of plaintiffs, by means of fraudulent representations on their part as to the value and qu lity of the land, the defendant being a resident of the state of Ohio, and unacquainted with values of land in the State of Washington; and that as such resident of Ohio, he was ignorant of the laws of Washington governing the descent of community property, and in such ignorance contracted for the conveyance of lands which he did not own; and that after de endant discovered his i ability to convey according to his agreement, he tried to make an equitable settlement with plaintiffs, and offered to pay back to them the money advanced on the sale, with interest thereon.

The measure of damages for the breach of a contract for the conveyance of land which the party contracting to convey does not own, is whatever amount has been paid him on the contract, with interest ther on from the date of payment.

*Appeal from Superior Court Jefferson County.*

Action by James Morgan and others against William Bell to enforce a contract for the conveyance of certain lands in Clallam county, State of Washington, or for dam-

ages for failure to convey. Judgment for plaintiffs, and defendant appeals.

*Hughes & Hastings*, and *R. H. & R. A. Ballinger*, for appellant.

*Hays & Plumley*, and *Geo. W. Tyler*, for respondents.

The opinion of the court was delivered by

DUNBAR, J.—A correct understanding of this case will necessitate a presentation of the material allegations in the pleadings. The first allegation in the complaint is—

"That on the 10th day of December, 1889, the plaintiffs and defendants entered into an agreement in writing of which the following is a copy: 'Contract made and entered into this 10th day of December, 1889, by and between William Bell, of Toledo, Ohio, and James Morgan, of Port Townsend, Jefferson county, Washington: Witnesseth: The said William Bell, being the owner in fee simple of the premises hereinafter described, has agreed, and does hereby agree, to sell and convey the said premises to the said James Morgan upon the following conditions, to wit: The said William Bell has agreed, and does hereby agree, in consideration of the sum of twenty thousand dollars, to be paid to him by the said James Morgan, five hundred dollars thereof to be paid cash in hands, the receipt of which is hereby acknowledged, and the sum of nineteen thousand five hundred dollars thereof to be paid on or before four months from the date hereof, and the said William Bell has agreed and does hereby agree, upon receipt of the full sum of said twenty thousand dollars, that he will execute and deliver to the said James Morgan a sufficient warranty deed, conveying to him a fee simple title to the following described premises: (Description omitted.) And it is further agreed by and between said parties, that should the said James Morgan fail to pay said sum of nineteen thousand five hundred dollars on or before four months from the date hereof, then the said sum of five hundred dollars this day paid by him shall be forfeited to the said William Bell.'" Duly signed, sealed and witnessed by William Bell and James Morgan.

The second allegation is to the effect that it was agreed upon by the plaintiffs that Morgan should act for them jointly in the purchase of the land, and that they were all jointly interested in the purchase of said land, and in the proceeds of said agreement.

"3. That on the 10th day of April, 1890, the plaintiffs demanded the conveyance of the said property from the defendant, and tendered nineteen thousand five hundred dollars to the defendant, and were ready and willing at all times under the terms of said agreement to accept and pay for said lands, and to duly and fully perform their said agreement under the said covenants upon the like performance by the defendant, but the defendant failed and refused to make said conveyance or to perform his portion of said agreement at said date, or at any other time, and still refuses to so perform, or in any way make proper restitution for such failure and refusal.

"4. That since the date of said agreement, to wit, December 10, 1889, and prior to the expiration of the four months mentioned in said agreement of sale, said lands had greatly increased in value above the said agreed purchase price of twenty thousand dollars, and were worth at the date or time provided in said agreement for the conveyance and sale of said lands upon the market in the vicinity of said land, one thousand dollars per acre, or of the aggregate value of one hundred and fifty-four thousand and five hundred and fifty dollars, and of the cash value of one hundred and thirty-four thousand five hundred and fifty dollars over and above the said nineteen thousand five hundred dollars agreed by said plaintiff to be paid at said time to said defendant.

"5. That the plaintiffs are still ready and willing to pay the purchase money of the said property to the defendant.

"Wherefore plaintiffs demand judgment:

"1. That the defendant execute to the plaintiffs a sufficient warranty deed, conveying to them a fee simple title to all of said lands described and set forth in said contract and recited in this complaint.

"2. For the sum of one hundred and thirty-four thou-

sand five hundred and fifty dollars, with ten per cent interest thereon since the 10th day of April, 1890, and their costs and disbursements."

To this complaint defendant interposed a demurrer on the grounds—

"1. That the said complaint does not state facts sufficient to constitute a cause of action.

"2. That there is a defect of parties plaintiff, in that there is shown upon the face of the complaint that there is no privity of contract between any of the plaintiffs herein except the plaintiff James Morgan."

The demurrer was overruled, and the defendant answered. A demurrer to the answer was sustained, and an amended answer was filed, in which defendant admitted the execution of the written instrument set out in paragraph one of the complaint, but denied the other allegations in paragraph one, and denied each and every allegation in paragraphs two, three and four of the complaint; and for an affirmative defense alleged, substantially, that he acquired the land in question by purchase on the 28th day of January, 1888, while he was a married man, the husband of one Elva E. Bell, who died intestate on the 1st day of March, 1888, leaving as her sole heir at law Elva Elain Bell, as the fruit of the marital relations between her and the defendant; and that the said Elva Elain Bell was still an infant, of the age of five years, and that the money used in purchasing said land was not owned by him at the time of marriage, or acquired after marriage by gift, devise, bequest or descent. That at the time said agreement was entered into he was, and for a long time previous thereto had been, a resident of Toledo, in the State of Ohio, and was wholly unacquainted with the laws of the State of Washington providing for the community interests of the wife with her husband in real estate acquired by him by purchase during the existence of the marital relation,

and fully believed that he was the sole owner of said land, having full power of alienation thereof; and averred that plaintiffs were, and for a long time previous thereto had been, residents of the State of Washington. That the said agreement was entered into between this defendant and the said plaintiff James Morgan at the instance and request of the said plaintiff, and upon his express representation to this defendant, either fraudulently and willfully to mislead this defendant, or ignorantly believing the same to be true, that this defendant was the sole owner in fee simple of the real estate described in said agreement, with full power of alienation thereof, he, the said plaintiff, well knowing at the time that this defendant acquired the said land by purchase as aforesaid, during the lifetime of said wife, and that his said wife was then deceased, and that she had died intestate, leaving as her sole heir at law one Elva Elain Bell, her child by this defendant, and that said child was still living, and of the age of about four years, and no more; and that he, this defendant, relying upon said representations of said plaintiff Morgan, and fully believing said representations to be true, executed said agreement and delivered it to said plaintiff. That afterwards, on or about the 8th day of July, 1890, and before the institution of this action, this defendant discovered, and avers the same to be a fact, that he was not the sole owner in fee simple of said real estate, but was the owner of the undivided one-half of the same, the remaining one-half being the property of the said Elva Elain Bell, as the heir at law of the said Elva E. Bell, deceased, who during her lifetime was, by operation of law, the owner of a community interest in said real estate with this defendant. That immediately upon the discovery by him that he was not the sole owner of the said real estate as aforesaid, this defendant executed to said plaintiff James Morgan, without any knowledge that the co-plaintiffs of said Morgan held or claimed any interest in said agree-

ment or the subject thereof, his deed of conveyance, with covenants of warranty, for his undivided one-half of said real estate, and tendered the same to said plaintiff, demanding of him a proportionate amount of the consideration agreed by said plaintiff to be paid, less the amount already paid thereon, to wit, nine thousand, five hundred dollars, which said deed of conveyance he, the said plaintiff, then and there and ever afterwards declined and refused, and still declines and refuses, to accept, and which proportionate amount of said consideration he, the said plaintiff, then and there and ever afterwards still declines and refuses to pay. That upon such refusal by plaintiff the defendant tendered to plaintiff the amount paid by plaintiff as a cash payment on said agreed consideration, to wit, five hundred dollars, together with interest at the rate of ten per cent per annum from the date of said payment until the time of said tender, and offered to rescind said agreement; and that said plaintiff then refused, and ever afterwards has, and still refuses to rescind said agreement; alleges that he has ever since said tender been, and still is, ready to convey his undivided one-half interest for a proportionate part of said agreed price, less the amount already paid him, or to refund said money paid, with interest on the same at the rate of ten per cent per annum, and that ever since said tender of five hundred dollars and interest, as aforesaid, he has been, and still is, ready and willing to pay the same to the plaintiffs.

The third affirmative defense, in addition to the matters alleged in the second, is that plaintiff Morgan, who was at the time of the execution of the contract a resident of the State of Washington, and well acquainted with the value of land, and who was on terms of social and business intimacy and friendship with the defendant; came to defendant's house in Toledo, Ohio, and well knowing his want of information as to the value of said lands, and fraudulently

taking advantage thereof, falsely represented to him that the said land was not worth more than the sum of twenty thousand dollars, and that defendant, relying upon said representations, and having full faith and confidence in the truthfulness of said representations, executed said agreement; alleges that afterwards, to wit, about the 8th day of July, 1890, he discovered, and avers it to be a fact, that the lands were of far more value than twenty thousand dollars, which fact was well known to plaintiff Morgan at the time; and demands judgment—(1) That said agreement is void; (2) that the plaintiff produce said agreement, and deliver it up for cancellation ; and (3) for costs of action and general relief.

Plaintiffs demurrer to all that portion of defendant's amended answer in the second and third alleged affirmative defenses and the allegations of new matter was sustained. On the issues left the cause was tried, and the court found, among other. things, that the value of the land in question at the time of the commencement of the action was $46,215, and, as a conclusion of law, that plaintiffs were entitled to recover as damages the difference between the price agreed upon in the contract, to wit, twenty thousand dollars, less the amount paid by plaintiff at the date of the contract, five hundred dollars, equaling $19,-500, and the value of said land on the 10th day of April, 1890, the date for the fulfillment of the agreement for the conveyance of said lands, to wit, the sum of $46,215, which said difference is $26,715; or, in other words, the measure of damages allowed by the court was the difference in the value of the land at the time of the breach, and the value of the land at the date of the contract. And judgment was entered accordingly.

The first point argued by the appellant is, that this is an action affecting the title to the real estate, and should have been brought in Clallam county, where the land is situated,

by virtue of § 47 of the code, which provides that actions for the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title, or for any injuries to, real property, shall be commenced in the county or district in which the subject of action, or some part thereof, is situated. We do not think this is the character of cases contemplated by the statute. The title to this land was not in dispute, and could not be affected by the decree of the court under the pleadings. It is true that the court could decree a specific performance of the contract under the allegations of the complaint, but it would be a decree affecting the parties to the action personally. It would not determine any question affecting the title in the sense in which the word "title" is evidently employed in the statute. We do not think that anything was decided in. *McLeod v. Ellis,* 2 Wash. 117 (26 Pac. Rep. 70) having any application to this kind of a case.

The second point raised by appellant is, that specific performance could not be decreed in this case, and that consequently the action should not have been maintained, as no damages could be warranted. While it is true that the complaint does not disclose the fact that specific performance could not be enforced, it is plain from the testimony; both of defendant and plaintiffs, that such is the fact, and that such fact was known to plaintiffs at the time of the commencement of the action. In fact there can be no dispute that the recognized and acknowledged inability of the defendant to perform the contract was the direct and only cause of the action, for the defendant had tendered a warranty deed, which had been refused by the plaintiffs because he was powerless to convey. This proposition is not disputed at all, but is rendered certain by the testimony of plaintiffs' attorney, Hays. Page 117 of the transcript.

36—3 WASH.

In answer to a question as to the identity of the deed the witness said:

" I cannot say that. There was, as I stated before, a paper writing purporting to be a warranty deed upon its face, but having examined the title to the land prior to this date, or that date, as attorney for the company, I had discovered that the defendant had not the power to make .a warranty deed."

And the witness then proceeds to give the reasons for his conclusions, viz., that the land was community property, and that upon the death of the wife, under the community laws of this state, one-half of the property descended to the heirs of the wife, and that the wife leaving one heir of her body one-fourth went to the heir, the wife having died intestate. (While it is not material to this cause, yet not wishing to be understood as endorsing the theory of construction of the community law advanced by respondent, that the surviving spouse is the heir with the child of the deceased spouse in the community estate, we will notice the statute. It is true that § 3302 of the code provides that when any person shall die seized of any lands, etc., it shall descend as follows: If the decedent leaves a surviving husband or wife and only one child, or the lawful issue of one child, in equal shares to the surviving husband, or wife and child, or issue of such child. But it is evident that it is the decedent's separate property that is spoken of in this section, for § 2412, which occurs in the chapter devoted to community property, provides that "in case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issues of his, her or their bodies.") In this case it appears that the defendant had offered to deed to plaintiff his individed one-half interest in the land, which offer had been refused, so that it does not fall within the

class of cases where part performance can be enforced and
damages given for the balance.    It seems well established
by the authorities, and is most certainly in strict harmony
with common sense, that the court will not do a useless
thing, or make a nugatory degree.    It is plain that the
court could not in this case decree a specific performance,
and that the plaintiffs knew that it could not when they
brought their action.    Then the question arises whether
the jurisdiction of a court of equity can be so extended
that it will entertain a case and give relief which is not
incidental to the main relief sought, or auxiliary to the re-
lief asked which gave the court jurisdiction of the case;
or granted for the purpose of making such relief complete;
but a purely independent relief.    Or, in other words, will
a court of equity, in an action asking for an enforcement
of specific performance as a basis of a complaint, award
damages for the violation of the contract when it con-
clusively appears that at the time of the commencement of
the action specific performance could not be decreed ; or
shall the plaintiffs be relegated to their remedy at law for
the violation of the contract.   And this is a question the
investigation of which is not coveted by this court, in view
of the fact that the authorities are conflicting, and that
many decisions have been made by the courts as to the
class of cases in which this independent relief can be given.

It is the fundamental principle regulating the exercise of
this equitable jurisdiction that, whenever the legal remedy
of damage is sufficient, equity will not interfere and the
specific performance will be refused.    Pomeroy on Con-
tracts, § 47.    We take it that the fair corollary to this
proposition would be, that where the legal remedy of dam-
ages is all that can be decreed, equity will not exercise juris-
diction, and the original proposition applies more forcibly
where the fact is determined that legal damages are all that
is actually sought; and in this case the plaintiffs must have

brought their action on the theory that a compensatian in damages would furnish a complete and satisfactory remedy, for they knew that no other remedy could be decreed.   The presumption that the award of damages will not be an adequate remedy is the very foundation of the jurisdiction to decree specific performance; and it philosophically and logically follows that jurisdiction will not attach when the inadequate remedy is all that can be enforced.   Any other construction renders inharmonious the operations of law, and confuses the principles upon which the jurisdiction is based.   Under the authorities, however, where something inequitable is shown in the transactions of the party who is trying to avoid the specific performance, or where there are inequitable circumstances surrounding the case, courts of equity, notwithstanding they cannot decree the performance of a contract, will grant relief in damages, and whether or not such an exception to the general rule can be justified on the ground of reason, the doctrine seems to be so well established by the decisions of the courts that it cannot with safety be disregarded.   So the rule is announced that, if the defendant has by his own act incapacitated himself from performance, the court of equity may, instead of dismissing the plaintiff's suit, award him the legal remedy of damages.   Pomeroy on Contracts, § 294.   The plain inference is, that if the reverse be true damages cannot be awarded, and the following proposition is announced in Mr. Waterman's work on Specific Performance, § 515:

" As a general rule, compensation is regarded as an incident only, unless there is a special equity authorizing the court to give relief; and jurisdiction will not be exercised for the sole purpose of assessing the damages for a breach of contract.   If the jurisdiction attaches, except as ancillary to a specific performance, or to some other relief, it must be under very special circumstances and upon peculiar equities, as, for instance, in cases of fraud, or in cases where a party has disabled himself by matters *ex post facto* from

a specific performance, or in cases where there is no adequate remedy at law."

We think that all the cases holding that damages can be awarded where it was known to the plaintiff that specific performance could not be decreed, are decided on the ground mentioned in the text above quoted, or based on some other decision holding that ground, though possibly not always distinguished by the indorsing court. In *Woodman v. Freeman*, 25 Me. 532, the court exhaustively reviews the leading decisions on this question, and decides that the jurisdiction of the court to give relief in equity by compensation in damages, where the facts do not authorize the court to give any other relief, attaches only in the following cases: (1) In cases of fraud and mistake, when there does not appear to be a plain and adequate remedy at law. (2) When relief against a forfeiture or penalty is sought and obtained. (3) When a contract or conveyance is properly set aside or rescinded, under circumstances requiring that some compensation should be made to one of the parties, to adjust the equities and do complete justice. (4) When specific performance is sought and decreed, in whole or in part. (5) When specific performance ought to have been, and could have been, decreed upon the state of facts existing when the bill was filed, but cannot be decreed on a hearing of the cause, because the defendant, pending the suit, has voluntarily disenabled himself to make a conveyance. (6) When by a bill of discovery and relief the discovery sought is obtained, the court having acquired jurisdiction of the case for the discovery, will retain it and give relief and, if necessary, by an assessment of damages. (7) When necessary to adjust the accounts, claims and equities between a *cestui que trust* and a trustee, chargeable for delinquency or unfaithfulness. (8) When necessary for the adjustment of equities between mortagor and mortagee. (9) When necessary for the liquidation and settlement of the concerns

of a partnership, when one of the partners is chargeable
with misconduct or fraud. (10) When necessary to give
complete relief in cases of nuisance. And by an examina-
tion of the cases reviewed by the court, but which it is not
necessary to cite here, it will be found, as it was found by
that court, that in nearly all cases of this character where
a court of equity assumes to award damages as an indepen-
dent remedy, the circumstances of the case brought it
within the provisions of one of the classes of cases announced
above.

That was a case where the court found that specific per-
formance could not be enforced, and the court in conclu-
sion says:

"After this examination, suited to exhaust the patience
both of writer and reader, the conclusion is irresistible, both
upon principle and upon authority, that the jurisdiction of
a court of equity to give relief by the assessment of dam-
ages in the matter before stated, cannot be sustained."

Some of the courts have referred to *Woodcock v. Bennet*,
1 Cow. 711, as supporting the doctrine that the court will
assess damages where specific performance could not be
enforced, but an examination of that case shows that it was
not properly distinguished, and it only needs a short quota-
tion to show upon what ground the court stood. Said the
court:

"It seems to be well settled that the court of chancery
will not, except under very particular circumstances, if the
party be not entitled to a specific performance, direct an
issue of *quantum damnificatus*, or a reference to the master
to ascertain the damages. If a party elect that remedy,
he must resort to law; but where the defendant has put it
out of his power to perform the contract the bill will be
retained, and it will be referred to a master to assess the
damages."

The leading case holding this doctrine is *Denton v. Stew-
art*, 1 Cox, 258, and was followed by *Greenaway v. Adams*,

12 Vesey, Jr., 394. It seems to be with some hesitation, however, that the court in that case extended the jurisdiction. The court says:

"The party injured by the non-performance of a contract has the choice to resort either to a court of law for damages or to a court of equity for specific performance. If the court doos not think fit to decree a specific performance, or finds that the contract cannot be specifically performed, either way I should have thought there was equally an end of its jurisdiction; for in the one case the court does not see reason to exercise the jurisdiction, in the other the court finds no room for the exercise of it. It seems that the consequence ought to be that the party must seek his remedy at law."

Notwithstanding these cogent reasons, however, the judge goes on to say that Lord KENYON having decided the other way in *Denton v. Stewart,* he felt constrained to follow that decision. In *Todd v. Gee,* 17 Vesey, Jr., 274, after deciding that except in very special cases it is not the course of proceeding in equity to file a bill for specific performance of an agreement praying in the alternative if it cannot be performed for damages, the lord chancellor says:

"In *Denton v. Stewart* the defendant had it in his power to perform the agreement, and put it out of his power pending the suit. The case, if it is not to be supported upon that distinction, is not according to the principles of the court."

In that case the specific performance was possible at the time the action was commenced; and when it was commenced the court had rightful jurisdiction of the case, and once having obtained jurisdiction, it would not allow itself to be divested of that jurisdiction by the wrongful act of the defendant.

But whatever we may think of the soundness of the law announced in those cases, the principles upon which they

were based can have no application to the case at bar. Here there are no inequitable circumstances of any kind surrounding this case, and no suspicion of any on the part of the defendant. It is conceded that at the time the contract was made the title was not in Bell and that he could not convey, and that the same condition of things existed and was known to the plaintiffs when the action was commenced. There is no suspicion of fraud; he did not seek the purchasers, but they sought him, and it was at their request that the agreement was made. He was simply mistaken as to his authority to sell, and the testimony shows that he made every effort to comply with his contract, and to place the plaintiffs in *statu quo;* that he offered to settle the matter in an equitable manner; so that there is not a circumstance surrounding the case or connected with it that tends in the least to make it an exception to the general rule, that where specific performance cannot be enforced the court of equity will not award damages for violation of the contract. The proposition of the respondent that defendant was in a position to perform his contract and avoid his principal liability for its non-performance, cannot be maintained. This land is absolutely beyond his control. It can only be sold by order of the probate court at public auction, and such order can only be obtained upon an affidavit that such sale is necessary for the payment of the debts of the estate, or the maintenance of the family or heirs, and that must also be a showing satisfactory to the judge. It is not within the contemplation of the law that the lands of miners will be ordered sold in aid of real estate speculations by outside parties, whether relatives or strangers. Without any fault of his own Bell was legally incapacitated from performing the contract, and plaintiffs knew this when they commenced the action, and the court never had rightful jurisdiction of the case; but as the appellant did not

object to the jurisdiction at the trial, and treated it as an equity case, he cannot raise the question here.

The third contention of the appellant is, that the court erred in granting alternative relief, and that such relief can only be granted in an action for specific performance when the plaintiff has shown a performance of all the conditions of the contract on his part, and the inability of the court to compel the performance is due to the fault of the defendant. This involves substantially the propositions that were discussed under the second point.

We think the fourth point of appellant, that the court erred in sustaining the demurrer to the second and third causes of defense pleaded in defendant's amended answer, must be sustained. The answer not only alleges the impossibility of the performance without fault of plaintiff, but that such impossibility was known to plaintiffs before action was brought, which fact, if proven, would have been sufficient, under all the authorities, to defeat the decree for specific performance, and was, consequently, a good and sufficient defense to an action for specific performance; but it also alleges a mistake of law on the part of the defendant by reason of his residence in another state, and by fraudulent representations on the part of plaintiffs, that the agreement was entered into at the solicitation and request of plaintiff Morgan, and that after he discovered his inability to convey as per agreement, he tried to make an equitable settlement with the plaintiffs, and offered to pay them back the money advanced, with interest thereon. The matters and things set up in the amended answer went to show that there were none of those inequitable circumstances or fraudulent acts surrounding this case which justify a court of equity in awarding damages, or take it out of the general rule, that courts of equity will not award damages except as ancillary to some other relief decreed. The plaintiffs had invoked the aid of a court of equity;

this was an equitable defense, and the defendants were entitled to it. Suppose the plaintiffs had alleged in their complaint that at the time Bell made the contract he could not legally convey the land, that the title was not in him, and that he entered into the contract through an honest mistake of the laws of Washington, he being at the time a resident of the State of Ohio, and at the time the action was commenced plaintiffs were aware of such facts, together with other affirmative averments in regard to the misrepresentation and fraud on the part of plaintiffs. It would certainly have appeared on its face that the court of equity could not decree specific performance, and if that be true, it is apparent that if the answer sets up the identical same matter, it would be a good defense to such a complaint.

The respondents rely upon the application of the maxim, *ignorantia legis neminem excusat*, and there can be no contention concerning the general rule, even in its application to courts of equity, that the simple mistake by a party as to the legal effect of an agreement which he executes, or the legal result of an act which he performs, is no ground for either defensive or affirmative relief, for reasons that are obvious, and have been so frequently decided that it would be idle to repeat them here. But it is equally true that there are some exceptions to this rule; for, as Mr. Pomeroy in his Equity Jurisprudence, § 842, says:

"Equity does sometimes exercise its jurisdiction on occasion of mistakes of law. If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud. It is not necessary that the misconception of law was the result of, or even aided or accompanied by, incorrect or misleading statements of facts by the other party."

The material question here is, does this case fall within the rule or the exception? And in the outset, in discussing this interesting question, to avoid the discussion of unnecessary propositions, it is well to keep in mind a well defined distinction between ignorance of an antecedent existing right which is to be affected by the agreement, and the legal import of the agreement itself. Thus in this case, if Bell's defense was that he did not know the legal effect of the agreement which he entered into, in the absence of fraud or inequitable conduct on the part of plaintiffs, it would not be a defense to the action; but this is not the defense which he offers, but it is, that he was mistaken about his right to enter into such a contract. "Mistakes, therefore," says Mr. Pomeroy, "of a person with respect to his own personal private rights and liabilities may properly be regarded, as in great measure they are, and may be dealt with as mistakes of facts. Courts have constantly felt and acted upon this view, though not always avowedly." But there is nothing in the proposition announced by Judge Story, as cited by respondent, that conflicts with this proposition. Many instances are there given where the courts refuse to relieve from a mistake of law, but they are all cases where the party was asking relief from the consequences flowing from a misunderstanding of the legal effect of the contract. Indeed, Judge Story, in § 130 of his work on Equity Jurisprudence, endorses the same distinction:

"Sec. 130. There may be a solid ground for a distinction between cases where the party acts or agrees in ignorance of any title in him, or upon a supposition of a clear title in another, and cases where there is a doubt or controversy or litigation between parties as to their respective rights. In the former cases (as has been already suggested), the party seems to labor in some sort under a mistake of fact as well as of law. He supposes, as a matter of fact, that he has no title, and that the other party has title to the property."

The principle in the case at bar is the same, though the facts are reversed. Bell supposed, as a matter of fact, that he had the title; he did not intend to convey land which he did not possess, but proceeded upon the supposition that it was his to convey. It was not a mistake in calculation as to the legal consequences of his agreement, but purely and simply a mistake of an existing antecedent right affecting his title.

An investigation of the cases cited by respondent shows that these decisions will in no wise militate against the position taken above, but simply go towards establishing the general rule, which, as we have before observed, cannot be disturbed. In *Bank of United States v. Daniel,* 12 Pet. 48, the controversy was over the legal effect of the instrument, and the court repeated the text that mere mistakes are not remedial, and repeats the language used in *Hunt v. Rousmaniere's Adm'r,* 1 Pet. 2, that whatever exceptions there may be to the rule they will be found few in number, and to have some peculiarity in their character, and to involve other elements of decision. *Jacobs v. Morange,* 47 N. Y. 57, is a case where the parties mistook the proper court of appeals, and plaintiff sought relief because he did not know the law; and the court of appeals there asserted the general doctrine, and stated that there are no circumstances of any description which add anything to the ground of relief. In *Champlin v. Laytin,* 18 Wend. 407; 31 Am. Dec. 382, the court found that the mistake complained of as error was mistake of fact and not of law, and the discussion on the other question was clearly outside of the case. Justice BRONSON, however, giving his personal views, may be fairly said to have undertaken to maintain the position contended for by respondent. The very able concurring opinion of Senator PAIGE takes exactly the opposite view. All the twenty-seven members of the court voted for the reversal of the decree, but in view of the two opinions expressed it is impossible

to tell on what grounds.   *Wood v. Price,* 46 Ill. 439, was a case where relief was claimed on a misapprehension of the legality of the terms employed in the contract.   It is conceded by all the authorities that no relief can be given in this kind of a case, where there are no inequitable circumstances surrounding it, and there were none claimed in this case.   *Hoover v. Reilly,* 2 Abb. C. C. 471, is a case where the party claims to have misapprehended the legal effect of his agreement.   *Goltra v. Sanasack,* 53 Ill. 458, involves the same principle.   It was a mistake of the legal effect of a deed.   Several of the cases cited by respondent, and nearly all of the American cases which have adopted the harsher rule, have drawn their inspiration from *Hunt v. Rousmaniere's Adm'r,* 1 Pet. 2 (8 Wheat. 174), which may be regarded as the leading case maintaining that view, so that it becomes necessary to give this case a careful scrutiny; and from such scrutiny it will be found that, while the judge who rendered the opinion indulged in a good many general observations, which have been caught up by other courts and quoted as the decision, without discriminating the case under consideration which called forth the remarks, yet when we come to examine what was really decided in that case, and what was before the court for determination, we find that this case is no authority against the doctrine sought to be maintained.   This was a case where the party accepted a power of attorney as security from his debtor instead of a mortgage.   It afterwards eventuated that they had made a mistake as to the efficacy of the power of attorney, and he asked to have his power of attorney reformed and declared a specific lien on two certain vessels, as it was alleged that it was the intention of the parties that the power of attorney should be a lien on the vessels; so that it will be seen that there was no mistake of law here concerning an ancillary or existing right of anyone, but that, like all the other cases, it was a misconception of the

legal effect of the instrument executed.   And as showing
just what was decreed in that case, we quote:

" It is not the intention of the court, in the case now un-
der consideration, to lay it down that there may not be
cases in which a court of equity will relieve against the
plain mistake, arising from ignorance of law.   But we
mean to say that where the parties, upon deliberation and
advice, reject one species of security, and agree to select
another, under the misapprehension of the law as to the
nature of the security so selected, a court of equity will
not, on the ground of such misapprehension, and the insuf-
ficiency of such security, in consequence of a subsequent
event, not foreseen, perhaps, or thought of, direct a new
security, of a different character, to be given, or decree that
to be done which the parties supposed would have been ef-
fected by the instrument which was finally agreed upon."

Again, equities of other creditors was the determining
influence in this decision, for the opinion concludes with
this remark:

"If all other difficulties were out of the way, the equity
of the general creditors to be paid their debts equally with
the plaintiff would, we think, be sufficient to induce the
court to leave the parties where the law has placed them."

Indeed, it will be seen by reference to the history of this
case that the consideration of the last proposition was all
that was before the court, for the case had been before the
court before in 1823, reported in 8 Wheat. 174, and the
court there decided (Chief Justice MARSHALL handing down
the opinion) that the demurrer to plaintiff's bill could not
be sustained, and reversed the judgment of the lower court
on that ground.   Said the court:

"We find no case which we think precisely in point,
and are unwilling, where the effect of the instrument is
acknowledged to have been entirely misunderstood by both
parties, to say that a court of equity is incapable of af-
fording relief.   The decree of the circuit court is reversed;
but as this is a case in which creditors are concerned, the

court, instead of giving a final decree on the demurrer in favor of the plaintiff, directs the cause to be remanded, that the circuit court may permit the defendants to withdraw their demurrer and to answer the bill."

And as the result of such order the case, in due course of time, was brought up again, with the result as reported in 1st Peters. So that it will be seen that as between the parties to the transaction, even in a case where the mistake was the mistake as to the effect of the instrument executed, the supreme court of the United States has decided that a court of equity can grant relief, while as between one of the contracting parties and the creditors of the other, such relief will not be granted when the effect of granting the relief will be to establish a lien on the property which would be otherwise subject to execution by the creditors. But the questions involved in this case are not decided there at all. *Lansdown v. Lansdown*, Moseley's Rep. 364, is a case holding in favor of equitable relief in this kind of a case. There the plaintiff had a dispute with his uncle concerning the respective rights to inherit the land of the plaintiff's deceased father, the plaintiff being the only son of an older brother of the defendant, who agreed to leave the matter to a schoolmaster, who examined some law books and informed them that the land went to the younger brother, the plaintiff's uncle. Upon this opinion they agreed to share the land between them, and conveyances were executed accordingly. Plaintiff afterward ascertained that the schoolmaster had given him erroneous advice, and that through a mistake of law he had deeded away property which clearly belonged to him, and filed a bill to be relieved. And it is held that the maxim *ignorantia legis non excusat* did not apply to that kind of a case. *Blakeman v. Blakeman*, 39 Conn. 320, is also a case exactly in point. There a right-of-way had become extinguished, and the grantor conveyed the land, warranting its privi-

leges and appurtenances. Both the grantor and grantee supposed that the right-of-way still attached to the land, and the court said the respondent sold and the defendant bought an extinct thing, both supposing it to be existing, and both ignorant that, from the nature of the case and as matters of law, the object could not exist. There was not here a mistake as to the legal effect of the deed, but a mistake as to the existence of the subject-matter; nor was there a mistake as to the nature and operation of any known or contemplated principle of law. There was simply added to the mistake of fact a mistake of a principle of law which, if known and contemplated, would have prevented the mistake under which the parties acted. So in the case at bar, if the principles of the community law, as they are now interpreted by the courts, had been known and contemplated, this contract never would have been entered into· See *Bingham v. Bingham*, 1 Vesey, sen., 126; *Cooper v. Phibbs*, 2 House of Lords, 149; 2 Pomeroy Eq. Jurisprudence, § 849.

But there is another principle of law which is conclusive in this case. The demurrer admits the fact that Bell was not a resident of the State of Washington, but of the State of Ohio, when this contract was made, and his mistake of the laws of this state is held to be a mistake of fact. Nor does the maxim that "ignorance of law is no excuse of the breach for non-performance of an agreement" apply to foreign laws, or laws of other states of the union. Ignorance of those laws is deemed to be ignorance of fact. *King v. Doolittle*, 38 Tenn. 77. Ignorance of law signifies ignorance of the law of one's own country, not ignorance of the laws of a foreign country. In this respect the laws of other states in the union are foreign laws. *Haven v. Foster*, 9 Pick. 112; 19 Am. Dec. 353. To the same effect is *Patterson v. Bloomer*, 35 Conn. 57; 95 Am. Dec. 218; *Raynham v. Canton*, 3 Pick. 293; *Bank of Chillicothe v. Dodge*, 8 Barb. 233. But notwithstanding the

rigid rule laid down by some courts, under all the circumstances surrounding this case, as shown by the answer, considering the fact that the non-resident defendant, who was ignorant of the situation of the land, both as to its value and its legal standing, was sought out by the resident plaintiff, who made a trip of thousands of miles to induce him to enter into this agreement, a man sufficiently wide awake and well versed in the land speculation business to be intrusted by a syndicate of business men, one of whom at least was a practicing lawyer of the state, as the manager and agent of the business, who perfectly understood the history of the land and of the circumstances surrounding it, and who by his representations to defendant persuaded and induced him to enter into this contract, and considering the earnest and unavailing efforts of the defendant to fulfill his contract, there cannot be a case found that will support the judgment in this case.    And if a court of equity cannot find circumstances surrounding it which will warrant it in granting relief, then the time honored and universally accepted definition of Blackstone, that equity is the correction of that wherein the law by reason of its universality is deficient, has lost its meaning and has become as "sounding brass and tinkling cymbals." It is not claimed that plaintiffs entered into possession under this agreement, or made valuable improvements, or expended any money in any way by reason of the contract whereby they could claim any equities. No damages were proven in any way except the loss of their bargain. They simply have an investment of five hundred dollars, and have refused the defendant's offer to place them in *statu quo*.

Appellant's fifth point is also well taken, and the answer, if for no other reason, should have been sustained as furnishing a basis for the introduction of proof of *bona fides* in mitigation of damages. And this brings us to the consideration of the important proposition, on which, it must

be confessed, there is lamentable conflict of authority, though, so far as the adoption of rules applicable to the principles involved in this particular case is concerned, the conflict is more limited. The question here is, couched in homely phrase, shall the vendee be allowed the benefit of his bargain where the vendor contracted to convey in good faith, believing that he had the right to convey, and is prevented from doing so. The leading case holding the negative of this proposition is *Flureau v. Thornhill*, 2 W. Bl. 1078, where Chief Justice DeGrey, in rendering the opinion of the court, said:

"Upon a contract for a purchase, if the title proves bad and the vendor is (without fraud) incapable of making a good one, I do not think that the purchaser can be entitled to any damages for the fancied goodness of the bargain which he supposes he has lost."

Justice Blackstone added:

"These contracts are merely upon conditions, frequently expressed, but always implied, that the vendor has a good title; if he has not, the return of the deposit with interest and the costs is all that can be expected."

And while the doctrine announced in this case by such eminent authority as Lord Blackstone has received some criticism as being an exception to the rule of law, that a vendor who from whatever cause fails to perform his contract, is bound to place the purchaser, so far as money will do it, in the position he would have been in if the contract had been performed, yet it has received the sanction of the great majority of the English courts as being an exception that is founded in common justice and right, and is acknowledged to be the English rule to-day; and what criticisms have been made on this decision do not reach the case at bar, but the principal criticism is, that the rule is too broad, and does not distinguish between the cases where the vendor contracted under the honest belief that he had

the title, and where he contracted with a view of afterwards obtaining the title for the purpose of conveying it, and failed to so obtain it. And so far as the last proposition is concerned, that case has been modified by some of the courts, if such a case could fairly be presumed to have fallen within the rule laid down. Nor do we understand that it is asserted by Mr. Sedgwick, in his work on Damages, that such is not the prevailing doctrine, although he is inclined to criticise its consistency. It is conceded by the respondent that the rule contended for by the appellant is the rule adopted by the English courts, so that a further analysis or citation of English authorities is unnecessary; but it is contended that the weight of authority in the United States is, that the measure of damages is the difference between the contract price and the value of the land at the time of the breach. And a decision of the United States supreme court, to wit, *Hopkins v. Lee,* 6 Wheat. 109, is cited as sustaining that view. But while the court in that case laid down the general rule that the measure of damages is not the price stipulated in the contract, but the value at the time of the breach, no question was before the court as to the incapacity of the grantor to convey, and there is no indication as to what rule the court would lay down in that kind of a case, and the court expressly states that it is not prescribing a rule of damages in case of eviction. The case of *Doherty v. Dolan,* 65 Me. 87; 20 Am. Rep. 677, cited by respondent, is strictly in point in favor of respondent's contention, and it is there squarely decided that the measure of damages is the same, whether the vendor acted in good or bad faith. But in *Kirkpatrick v. Downing,* 58 Mo. 32; 17 Am. Rep. 678, also cited by respondent, the court decided that where the vendor in a contract for the sale of land knew at the time the contract was entered into that he had no title, or if having the title the sale is prevented because he changes his mind or because he neglects to take the proper steps

to put the purchaser in possession, the purchaser may, in an action for breach of such contract, recover beyond his expenses, damages for the loss of his bargain. The court found that the defendant had disenabled himself, and the opinion distinguished that case from cases where the vendor acted in good faith and was prevented from making title. Nor can we agree with the respondent that *Pumpelly v. Phelps*, 40 N. Y. 59; 100 Am. Dec. 463; *Baldwin v. Munn*, 2 Wend. 399; 20 Am. Dec. 627, and *Tracy v. Gunn*, 29 Kan. 508, show that in states where the liberal rule is recognized that it is continually questioned and modified. In *Pumpelly v. Phelps, supra*, the decision of the court was, that the rule that the vendor who contracts to sell and convey real property in good faith believing he had a good title, but who discovered it to be defective, for that reason refuses or is unable to fulfill his contract is, in an action against him by the vendee for the breach, liable only for nominal damages, could not be extended to cases where the party contracts to sell lands which he knows at the time he has not the power to sell and convey. So that while the court was opposed to extending the rule, the rule itself was in no way questioned. In *Baldwin v. Munn, supra*, the court, after very emphatically announcing the rule laid down in *Flureau v. Thornhill*, proceeded to say that—

"If the vendor acts in bad faith and refuses to convey because the property has increased in value, and with a view of putting the enhanced value in his own pocket, it becomes a case of fraud, and plaintiff would clearly be entitled either to compel a specific performance in equity, or to recover by way of damages the difference between the contract price and the enhanced value when the conveyance should have been made."

In *Tracy v. Gunn, supra*, the court, speaking through Judge Brewer, says: "In breaches of contracts to convey real estate, a peculiar distinction as to the measure of damages runs through the cases, and that founded upon the motive with which the vendor acts. If he acts in good

faith, it is held that the contract price becomes the measure of damages, while if he acts *mala fide* the vendee may recover the actual damages," and cites Sedgwick on Damages, where that author in distinguishing these kinds of cases, says:

"In these cases the line has been repeatedly drawn between parties acting in good faith and failing to perform because they could not make a title, and parties whose conduct is tainted with fraud or bad faith. In the former case the plaintiff can only recover whatever money has been paid by him, with interest and expenses; in the latter, he is entitled to damages resulting from the loss of his bargain. This exception cannot, I think, be distinguished or explained on principle, but it is well settled in practice."

The rule is thus laid down by Mr. Field in his work on Damages (2d ed.), § 481:

"In an action for the breach of contract, the commonly received doctrine, both in England and in this country, is that where the consideration has been paid on a contract to convey lands at a future time, if there is a breach on the part of the seller, and he has acted in good faith, and the failure arises from no intentional fault or wrong of his own, the purchaser can only recover the consideration paid and interest; and where, under similar circumstances, no consideration has been advanced, the purchaser can recover nothing, or only nominal damages."

In *Staats v. Ten Eyck*, 3 Caines, 111; 2 Am. Dec. 254, Chief Justice Kent, in delivering the opinion of the court, in support of this doctrine, says that no prudent man would venture to sell his property if there was no limit to the damages for which he would be responsible in the event of the failure of his title. He asks who, for the sake of one hundred pounds, would assume the hazard of repaying as many thousands to which value the property might arise by causes not foreseen by either party, and says the supposed general rule is to limit the

recovery as much as possible to an indemnity for the actual injury sustained, without regard to profits which the plaintiff has failed to make, and the rule is laid down accordingly.

The case at bar aptly illustrates the injustice which the eminent justice sought to prevent. If plaintiff's allegations are true, a contract for sale of lands which in December were worth twenty thousand dollars, in April following were worth one hundred and fifty-four thousand five hundred dollars, and the result is that for the pitiful sum of five hundred dollars the plaintiff, who was acting in perfect good faith, is called upon to yield up one hundred and thirty-four thousand five hundred dollars in response to plaintiff's investment of five hundred dollars for four months. If such a rule were adopted in this western country, where what is cheap agricultural or farming land one year is valuable city property the next, and where the laws, by reason of the formative condition of the state, are unsettled and unadjudicated, a conveyance of land would be a perilous transaction which a prudent man might well hesitate to engage in. It must be conceded that no rule can be laid down that will provide against all hardships, but the one that commends itself to this court is the one which will most evenly adjust the equities between the contracting parties. Hence we decide, that in this case the measure of damages is the amount paid with legal interest thereon from the date of payment, and this, it seems, was tendered by the defendant before the commencement of the action. An investigation of this subject has convinced us that even in the United States the great weight of authority sustains the rule announced. The extreme length of this opinion will prevent any further review of the cases, but we will cite as supporting the rule: *Sawyer v. Warner*, 36 Iowa, 333; *Cockcroft v. N. Y. & H. R. R. Co.*, 69 N. Y. 201; *Sweem v. Steele*, 5 Iowa, 352;

*Foley v. McKeegan,* 4 Iowa, 1; 66 Am. Dec. 107; *Thompson v. Guthrie,* 9 Leigh, 101; 33 Am. Dec. 225; *Conger v. Weaver,* 20 N. Y. 144; *Drake v. Baker,* 34 N. J. L. 358; *Peters v. McKeon,* 4 Denio, 546; *Hall & Rawson v. Delaplaine,* 5 Wis. 206; 68 Am. Dec. 57; *McNair v. Compton,* 35 Pa. St. 23; *Leggett v. Mutual Life Ins. Co.,* 53 N. Y. 394; *Herndon v. Harrisson, Adm'r,* 34 Miss. 486; 69 Am. Dec. 399.

It was asserted by the respondent's attorney, in the argument of this case, that this court had already passed upon this question in opposition to the rule here laid down, in *Hanson v. Tompkins,* 2 Wash. 508 (27 Pac. Rep. 73). We have examined that case, and find that it was decided there that where a party makes a misrepresentation of a material fact and the other party acts on it, the first party is liable for any damages which the second party sustains by reason of such misrepresentation, whether the party making them knew them to be false or not. The case then under consideration and the authorities cited show conclusively that there was no question of mistake of law in the case.

For the reasons given, the judgment is reversed, and the cause remanded to the lower court with instructions to dismiss the same with costs for defendant.

ANDERS, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J.—I concur in the result, but not in holding the action transitory.