[No. 15677.   Department Two.   September 3, 1920.]

G. A. McCARTY, *Respondent,* v. CALIFORNIA FARMS COMPANY, *Appellant.*[1]

VENDOR AND PURCHASER (30)—CONTRACT—CONSTRUCTION—SUBJECT-MATTER—TITLE TO CROPS. A vendee is entitled to crops growing on lands purchased in January under a contract providing that title would be given within thirty days from acceptance of contract and receipt of first payment with a crop mortgage as security, the vendor stating that he would not be surprised if the purchaser realized the full price of the land from the crop.

SAME (182)—BREACH OF CONTRACT—FAILURE TO CONVEY TITLE—DAMAGES. Where the vendor refused to convey title merely for the purpose of obtaining the crop then growing upon the land, the vendee was entitled to recover his actual damages as measured by the difference between the contract price of the land and its value as enhanced by the crop, together with the money paid on the contract and his expenses.

APPEAL (451) — REVIEW — HARMLESS ERROR — ADMISSION OF EVIDENCE. Error in the admission of evidence as to the measure of damages is harmless in an action tried to the court, where the court did not consider it in fixing the damages.

[1]Reported in 192 Pac. 882.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered May 19, 1919, upon findings in favor of the plaintiff, in an action on contract, tried to the court.    Affirmed.

*Davis & Heil*, for appellant.

*Post, Russell & Higgins*, for respondent.

Mount, J.—This action was brought to recover damages for a breach of a contract of sale of real estate. The action was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff for $1,862.50.    The defendant has appealed.

It appears that the appellant is a California corporation maintaining an office at Spokane, in this state, engaged in the sale of lands in the state of California. The respondent, in December of 1917, at the solicitation of one Frank Smith, an agent of the appellant, in company with Mr. Baymiller, who was secretary of the appellant corporation, went to the vicinity of Orland, in California, for the purpose of looking over some land there with the idea of purchasing a portion of such land.    After they had reached Orland, respondent was shown 165 acres of land in the vicinity of Orland. Thereafter the parties entered into an agreement as follows:

"This agreement, entered into this 5th day of January, 1918, between the California Farms Co., party of the first part, and G. A. McCarty, of Rosalia, Washington, party of the second part.

"It is understood that you have this day made an offer of $50 per acre on the 165 acres lying north of the so-called olive field, being a part of the Reed Ranch, owned by the Midland Counties Land & Irrigation Co. The sum of $500, together with this contract, shall be placed in escrow, and if this offer is accepted, the money shall be turned over to the California Farms

Co., this shall then form a binding agreement between us.

"The terms of this agreement shall be as follows: The price of $50 an acre is to be paid—$3000 (of which $500 is hereby acknowledged) upon acceptance of this agreement. $1,125 on September 1, 1918, balance to be paid in five equal annual installments, the first of which is to be paid on September 1, 1919; deferred payments shall draw interest at the rate of 6% per annum, payable on September 1 of each year. In the event of non-acceptance of this contract the $500 to be returned to party of second part. Upon receipt of the $3,000 and the $1,125, we agree within thirty days to give a grant deed, conveying marketable title to the land above described, and a certificate of title showing the same to be free and clear, except as to the mortgage, which you shall give us at the time deed is given to secure balance of the payment.

"If this is your understanding of the agreement, you will please endorse your name in the space below provided, and upon acceptance by party of the first part shall become a binding agreement upon us.

"California Farms,
"By W. H. Baymiller,
"G. A. McCarty."

At the time this contract was made, respondent gave appellant his check for $500 to be placed in escrow with the contract pending an acceptance of the offer. A few days thereafter appellant accepted the terms thereof and cashed the check. Soon thereafter Mr. Baymiller returned to Spokane. Mr. McCarty also returned to Spokane and had a conversation with the agent Smith, in which Mr. McCarty requested a deed for the land. Thereupon Mr. Baymiller wrote to Mr. McCarty a letter as follows:

"Spokane, Washington, Jan. 19, 1918.
"Smith advised me that you wanted to get deed and certificate of title to the 165 acres. I am writing Mr. Harden to send deed with certificate of title together

with mortgage for $4,125 on the property. The certificate of title to show the release from the bank. These papers to be escrowed in the Old National Bank of Spokane with the instructions to be turned over to you upon receipt of the further sum of $2,500 and a crop mortgage for $1,125. I assume this is as you wished. It may take a little time to get the certificate of title brought up to date, but in the meantime, our contract will stand. Or, if you prefer you can have a contract made direct from the owner to you covering these points.

"I just returned from the ranch day before yesterday, and since you left, we have had two fine rains, together with a lot of warm weather, and I have never seen grain grow so fast in my life. The old timers there tell me we have the largest crop prospects they have ever seen. We are unique in this prospect too, as practically all the rest of California is short of rain and present indications are for $3 barley. It wouldn't surprise me a bit if you can take the full price of that land off of this crop.

"I feel satisfied that you will get somewhere between 17 and 20 sacks to the acre. I consider that you have made the best buy that we have had on the ranch, and I wish also to say that we have some job getting the deal through on that basis."

In reply to this letter Mr. McCarty wrote to Mr. Baymiller as follows:

"Rosalia, Wash., Jan. 22-18.

"Yours of the 19th inst. received and in reply will say that I will be in Spokane in a few days and will call at your office, and am ready to settle as per contract when I am satisfied title to land is all O. K."

Thereafter Mr. McCarty called upon Mr. Baymiller in Spokane and was informed that the papers were not yet ready. Mr. McCarty then, in order to complete the contract, made another trip to California to get possession of the land. On this trip he took with him $2,775, $2,500 of which was to make the payment pro-

vided for. He deposited this money in the bank in Orland, where he was introduced by the bookkeeper of the appellant company. While in California he was informed that the company could not then make title to the land and that they refused to carry out the contract. He thereupon returned to Spokane and brought this suit for damages, with the result as above stated.

A number of assignments of error are discussed in the appellant's brief, but the principal point, and the one upon which the case turned, was whether the crop of barley which was then growing upon the land should go with the land.

Mr. Smith, who was a sales agent of the appellant company, testified that, in offering the land for sale, the crop of barley then growing upon the land was to go with the land. The respondent testified to the same effect, and that the $1,125 mentioned in the contract was to be secured by a crop mortgage upon the crop of barley then growing upon the land. It will be noted that the contract above quoted does not mention the crop growing upon the land. It recites that, "upon receipt of the $3,000 and the $1,125, we agree within thirty days to give a grant deed, conveying marketable title." So we think it is apparent from the contract that the deal was to be closed within thirty days, because it is provided in the contract that the balance of $2,500 upon the $3,000 was to be paid upon the acceptance of the agreement, and $1,125 on September 1.

After the contract was entered into, the parties agreed that it was not necessary to pay the $2,500 as provided in the original agreement, because the contract was modified by the letter of January 19, above quoted, so that one-half of the purchase price of the property was to be paid when the papers were escrowed in the Old National Bank and were then to be turned

over to the respondent upon receipt of the sum of $2,500 and a crop mortgage for $1,125. We think it is apparent from these provisions that it was intended that the title to the property should be conveyed to the respondent within the thirty days, or at least as soon as the papers could be prepared and sent to Spokane. It is apparent too, from the letter dated January 19, that the barley crop was to go with the land, because the letter states, "it wouldn't surprise me a bit if you can take the full price of that land off of this crop. I feel satisfied that you will get somewhere between 17 and 20 sacks to the acre." From this statement in the letter of January 19, it follows that the appellant intended to, and did, sell to the respondent, by the terms of the contract and letter, not only the land, but the barley crop which was then growing upon the land. When the respondent insisted upon the contract being carried out as indicated by the letter of January 19, the appellant refused to convey the property according to the terms of the contract because it contended that the barley crop did not go with the land. We conclude upon the whole record that the crop was intended to go with the land, and the breach of a contract was made by the appellant when it refused to deliver the deeds as stated in the contract and in the letter modifying the contract. We are also satisfied that the appellant acted in bad faith in not conveying the land to the respondent as it had agreed to do. Upon the trial of the case it was conceded that the appellant had the ability to convey title to the land but it refused merely for the purpose of obtaining the crop which was then upon the land. Respondent was therefore entitled to recover his actual damages, which were the difference between the contract price and the enhanced value, which the court found was the value of the crop, and

also the money paid upon the contract and his expenses. *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614.

Appellant argues that the court erred in receiving in evidence testimony with reference to the price of barley in San Francisco during the year 1918. We think it is unnecessary to notice this contention further than to say that this evidence, while admitted by the court, was not considered in arriving at its conclusion. It was conclusively shown upon the trial, if not conceded, that the value of the barley crop upon this land in January was $7.50 per acre. The court, instead of following the evidence with reference to the price of barley and the quantity produced upon the land, concluded that the barley growing upon the land was worth $7.50 per acre and gave judgment for that amount.

The trial court also gave judgment for the expenses of the respondent in making his trip to California in an effort to obtain title, and also for the $500 which he had advanced in payment of the land. These items added together made the amount of the judgment which was entered.

We are satisfied upon the whole case that the judgment entered was right. It is therefore affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and TOLMAN, JJ., concur.