[No. 6180–1.   Division One.   April 23, 1979.]

HUNT–WESSON FOODS, INC., *Appellant*, v. MARUBENI ALASKA SEAFOODS, INC., ET AL, *Respondents.*

*Ferguson & Burdell, W. Wesselhoeft,* and *Henry Jameson,* for appellant.

*Bogle & Gates, Delberg D. Miller,* and *Spencer Hall, Jr.,* for respondents.

FARRIS, J.—Hunt–Wesson Foods, Inc., brought this action against Marubeni Alaska Seafoods, Inc., and Marubeni America Corporation for breach of contract. After trial to the court, Hunt–Wesson was awarded damages of $52,248.40 plus interest and costs against Marubeni Alaska. Its claim against Marubeni America was dismissed. Hunt–Wesson challenges the measure of damages used by the trial court; Marubeni Alaska cross–appeals. We affirm.

Hunt–Wesson manufactures and sells various food products, including cottonseed salad oil. Marubeni Alaska, an Alaska corporation, and Marubeni America, a New York corporation, are wholly owned subsidiaries of Marubeni Corporation of Japan. Both engage in the import–export business and maintain offices at the same Seattle address.

In a December 17, 1974, telephone conversation, Spencer Kim, a Seattle office employee of Marubeni Alaska, and Emmett Wells, an employee of Hunt–Wesson, entered into a contract for Marubeni Alaska to purchase cottonseed oil from Hunt–Wesson at 54.39 cents per pound. Wells testified at trial that the contract was for 500 metric tons, plus or minus 10 percent at buyer's option; Kim testified that the agreement was for 80 metric tons, with an option to purchase additional cottonseed oil in the future.

A few days later, Wells drew up a standard Hunt–Wesson firm price contract confirming the terms of his oral agreement with Kim. The contract incorrectly named Marubeni America as purchaser and was addressed and mailed to Marubeni America. Kim received the contract in early January 1975, but did not read it. Further, Marubeni Alaska did not give written notice of any objection it had to the contents of the contract within 10 days.

The firm price contract specified delivery for the first half of January 1975. Marubeni Alaska took delivery of 86.6 metric tons of cottonseed oil under the December 17 contract during that period. By February 4, Hunt–Wesson had delivered enough oil to a specified delivery terminal to fill the rest of the contract.

In February, after conversations concerning the unpaid invoice for the 86.6 metric tons of oil already delivered (which was later paid), Marubeni Alaska repudiated any contractual obligation for additional cottonseed oil. In a letter dated March 17, 1975, Hunt–Wesson proposed four options for resolving the dispute, including resale of the goods. In response, Marubeni Alaska denied it had any further obligation under the contract.

Prior to this time, on February 28, 1975, Hunt–Wesson had contracted to sell 350 metric tons of cottonseed oil to Oleo Trading Company. The Oleo Trading contract had no connection whatsoever with the Marubeni Alaska contract. After Marubeni Alaska's second repudiation, however, Hunt–Wesson alleged that it decided to use the refused oil to fill the Oleo Trading contract and shipment was made on April 3, 1975.

The trial court found that Hunt–Wesson had neither given notice of its intent to resell the oil, nor had it identified the oil delivered to Oleo Trading to the Marubeni Alaska contract. The court denied recovery of the measure of damages provided by RCW 62A.2–706(1), the difference between contract price and resale price. Rather, it applied the measure of damages set forth in RCW 62A.2–708. The court found under RCW 62A.2–708(1) that the time of

tender was the first half of January 1975, and that the difference between the market price at that time and the unpaid contract price was $19,708.29. Because this amount would not have put Hunt–Wesson in as good a position as performance would have, the court awarded Hunt–Wesson lost profits under RCW 62A.2–708(2), computed at $49,511.07 plus $2,737.33 in incidental costs. Finding this claim to be liquidated, the court also awarded prejudgment interest.

Hunt–Wesson argues that the letter of March 17 gave Marubeni Alaska notice that Hunt–Wesson intended to resell the oil, that the oil shipped to Oleo Trading was reasonably identified to the Marubeni Alaska contract, and that the court therefore erred in refusing to apply the measure of damages provided in RCW 62A.2–706(1). We conclude that there was substantial evidence to support the trial court's finding that the oil was not identified to the Marubeni Alaska contract.

■ Hunt–Wesson contends that the court erroneously found the time for tender to be the first half of January 1975, as specified in the delivery term of the firm price contract. RCW 62A.2–503(1)(a) requires the seller to keep the goods available for the period reasonably necessary to enable the buyer to take possession. The fact that the seller is required to hold goods after they have been tendered does not alter the time of tender. We reject Hunt–Wesson's argument.

■ Marubeni Alaska argues on cross appeal that the oral contract was unenforceable because there was no meeting of the minds concerning the essential quantity term and because the written confirmation sent to Marubeni America did not satisfy the statute of frauds with respect to Marubeni Alaska. The trial court found, on conflicting evidence, that Hunt–Wesson and Marubeni Alaska

entered into an oral agreement for Marubeni Alaska to purchase from Hunt–Wesson 500 metric tons of cottonseed oil. There was substantial evidence to support that finding. We will not substitute our judgment for that of the trial court. *Beeson v. Atlantic–Richfield Co.*, 88 Wn.2d 499, 563 P.2d 822 (1977).

RCW 62A.2–201(2) provides that between merchants a written confirmation of an oral contract will satisfy the statute of frauds if the party receiving it has reason to know its contents, unless written notice of objection to its contents is given within 10 days after it is received. Marubeni Alaska is a merchant for purposes of RCW 62A.2–201(2). *See* RCW 62A.2–104(1), Official Comment 2, RCWA 62A.2–104. Written confirmation of the oral agreement was received by Marubeni Alaska, which had reason to know its contents. Because Marubeni Alaska failed to object in writing to the contract within 10 days after receipt, the statute of frauds was satisfied. RCW 62A.2–201(2).

■ Marubeni Alaska also argues that the trial court erred in finding the lost profits claim to be liquidated and in awarding prejudgment interest. Prejudgment interest is allowable when the amount claimed is liquidated. A liquidated claim may be found when the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion. *Seattle v. Dyad Constr., Inc.*, 17 Wn. App. 501, 565 P.2d 423 (1977). Exhibits introduced in evidence described with particularity the various cost factors from which Hunt–Wesson calculated its profit at 6.18 cents per pound on a contract price of 54.39 cents per pound. When applied to the quantity term, this data enabled the trial court to compute the amount of Hunt–Wesson's lost profits with exactness. Prejudgment interest was properly awarded. *See Prier*

*v. Refrigeration Eng'r Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968).

Affirmed.

WILLIAMS and DORE, JJ., concur.

Reconsideration denied September 26, 1979.

Review denied by Supreme Court February 22, 1980.