[No. 28341-3-I.   Division One.   February 16, 1993.]

KING AIRCRAFT SALES, INC., *Respondent,* v. JOE LANE, JR., ET AL, *Appellants.*

---

*Carl P. Gilmore, Aaron Keyt,* and *Preston Thorgrimson Shidler Gates & Ellis,* for appellants.

*John D. Lowery* and *Riddell, Williams, Bullitt & Walkinshaw,* for respondent.

PEKELIS, A.C.J. — Joe Lane, Jr., d.b.a. The Lane Company, and Lane Aviation, Inc. (Lane) appeal the judgment of the trial court awarding King Aircraft Sales, Inc., d.b.a. King Aviation Services (King) $338,280.60 in damages, prejudgment interest, attorney fees, and statutory costs for its breach of a contract to sell two airplanes to King. The principal issue presented in this appeal, one of first impression in Washington, is whether the trial court may award money damages as a remedy in a claim for specific performance under the Uniform Commercial Code (UCC), RCW 62A.2-716. The trial court found King was entitled to specific performance and, because the planes were no longer available, awarded relief in the form of "value". The trial court determined value by using a lost expectation of profit approach resulting in an award of $157,010 plus return of the $10,000 deposit. In addition, the trial court awarded prejudgment interest of $35,688.60 and attorney fees in the amount of $135,454 and statutory costs of $128.

Lane appeals the award of these amounts. King cross-appeals from the trial court's determination of value using the expectation of lost profit approach instead of the wholesale "blue book" value. We affirm all of the trial court's rulings except for the award of attorney fees and the amount of the prejudgment interest, which we reverse.

## FACTS

The trial court found that in October 1988, King made a written offer to purchase two "quality, no damage" aircraft from Lane for $870,000. The offer was accompanied by a $10,000 deposit. Lane accepted the King offer both in writing and by depositing the $10,000 deposit. The acceptance

created a contract of sale between the parties. King was to perform certain requirements but prior to the expiration of the time to perform, Lane advised King it was backing out of the agreement and that it had reached agreement with another party, Western Aircraft (Western), for the sale of the planes. Because at the time Lane backed out of the contract the time for King's performance had not yet expired, the trial court concluded that Lane's action was a breach of the contract.[1]

King made it clear to both Lane and Western that it intended to enforce its contract with Lane and filed suit in Texas state court, seeking a temporary restraining order (TRO) to prohibit the sale of the aircraft to anyone other than King. The Texas state court issued the TRO. However, the case was later removed to a federal court in Texas, which denied King's motion to extend the TRO.

Lane then rescinded the Western contract and returned Western's deposit. Although Lane refused to honor the original contract with King, in settlement attempts pending litigation, it offered to sell the planes to King for the same price, but "as is", rather than "quality, no damage" airplanes as required in the original contract. King refused to purchase the planes under the terms of Lane's proposal and insisted on compliance with the original contract. At this time King had tentatively arranged to resell the planes for a profit of approximately $165,000.

After the federal court in Texas refused to extend the TRO, King brought this action in Washington and sought a TRO to prohibit the sale of the planes. In addition, King's complaint sought specific performance of the contract and other appropriate relief. After the King County Superior Court granted the TRO, King dismissed its federal court action. Subsequently, in December 1988, the King County Superior Court dissolved the previously granted TRO and sanctioned King for having misled the court and for failing to give proper notice of hearing to the other parties.

---

[1]Because Lane does not appeal the trial court's determination that it breached the contract, we do not recite the parties' evidence on the issue of breach.

In January of 1989, long before trial, Lane sold both planes "as is" to Priester Aviation (Priester) for $870,000. Priester put the planes on the market and resold them separately in a series of transactions.

After the Washington TRO was quashed, King moved for leave to reinstate and amend its complaint in the federal court in Texas to add a claim for legal remedies and once again add Lane as a defendant. The federal court granted the motion and an amended complaint was filed. However, Lane moved to dismiss the federal action for lack of personal jurisdiction. Lane's motion was granted and the action was dismissed without prejudice.

In early June 1990, King retained its third Washington counsel to proceed with the instant action in Washington. Previously, former counsel, and/or King acting pro se, had agreed to set the case for trial on August 6, 1990. The case schedule specified a discovery cutoff date of June 18, 1990, and July 2, 1990, was the last day to file dispositive motions. As of June 8, 1990, no depositions had been taken and Lane, through counsel, had not responded to discovery requests served by previous counsel. King's new counsel filed motions to continue the action and to amend the "Washington" complaint to add a claim for damages for the breach of contract. The motions were denied. King also attempted to interject a damages claim into the suit in the context of a response to a cross claim by Lane for intentional interference. The trial court granted Lane's motion to strike the damages claim and also dismissed Lane's cross claim. No appeal was taken from these rulings.

King's claim for specific performance and "other appropriate relief" was tried before the court without a jury. After trial, the court in its oral opinion ruled that Lane had breached the contract between the parties and that King should recover the "value" of the planes, as measured by the profit made by Priester, on its resale of the planes. Neither party had introduced evidence on this point, so the court ordered the parties to conduct posttrial discovery on the sale

of the planes by Priester. Both parties objected to reopening the case for additional discovery.

Ultimately, the trial court did not hold an additional hearing on the issue of value. Instead, the trial court considered correspondence of counsel and affidavits as well as briefing on the issue of value. Priester was deposed and the parties learned that one of the planes had been sold in a complicated 3-plane transaction and that the other plane had been altered and "cannibalized", thus making comparisons and a determination of value from these sales virtually impossible. Lane contended that Priester lost money on the resale of the planes, and alternatively suggested the trial court consider the blue book measure of *wholesale* value for the planes. King countered that a blue book measure of value could be correct as long as the court used retail value, adjusted upward by 25 percent because of the exceptional condition of the planes.

The trial court entered findings of fact that a contract was formed and that Lane breached the contract before the time for King's performance expired. In addition, the trial court found the planes were fairly characterized as "one of a kind" or "possibly the best" in the United States; however, it was not proved that the planes were "unique" because there were others of the same make and model available. However, the planes were so rare in terms of their exceptional condition that King had no prospect to cover its anticipated resales by purchasing alternative planes, because there was no possibility of finding similar or better planes.

Therefore, the trial court concluded that under the total surrounding circumstances this case appropriately fell within the "other proper circumstances" clause of the specific performance statute, RCW 62A.2-716(1), and therefore King was entitled to specific performance. Relying on the official comments to RCW 62A.2-716, the trial court noted that the inability to cover was strong evidence of "other proper circumstances" for an action/award of specific performance. Because the planes were no longer available the trial court concluded

that specific performance should take the form of the value of the aircraft at the time of the breach. The trial court concluded this value could be measured either by the blue book value, including increased price adjustments for the prime condition of the planes, or by King's expectation of profit. The trial court chose the latter and awarded judgment to King as set forth above.

## I

Lane's principal claim on appeal is that because this was solely an action for specific performance under the UCC, and because the goods had been sold and thus were inaccessible, no remedy was available to King. Lane contends the trial court had no authority to make a dollar value award. Its argument is as follows: Because King failed to plead a claim for monetary damages in its original complaint and had twice been denied permission by the court to add such a claim, no right to a damages remedy existed. However, because an adequate remedy at law existed, albeit not one available to King, specific performance was not proper here either.

We disagree and find that the remedy fashioned by the trial court was proper under the UCC and Washington common law.

The UCC, § 2-716, codified in Washington as RCW 62A.2-716, provides:

> **62A.2-716 Buyer's right to specific performance or replevin.** (1) *Specific performance may be decreed where the goods are unique or in other proper circumstances.*
>
> (2) The decree for specific performance may include such terms and conditions as to payment of the price, *damages*, or other relief as the court may deem just.
>
> (3) The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered.

(Italics ours.)

The UCC, like its predecessor, the Uniform Sales Act, does not expressly require that the remedy at law be inadequate in order to invoke specific performance. However, the stated intent of the drafters of the UCC was to continue "in general prior policy as to specific performance and injunction against breach", and also "to further *a more liberal attitude* than some courts have shown" toward specific performance. (Italics ours.) Official Comment 1, RCWA 62A.2-716.

Nevertheless, there is a split of authority among those jurisdictions which have considered whether a buyer's remedy at law must be inadequate before specific performance can be granted. *Compare Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc.*, 321 Pa. Super. 428, 468 A.2d 784 (1983) (requiring inadequacy of remedy at law) *and Klein v. PepsiCo, Inc.*, 845 F.2d 76 (4th Cir. 1988) *with Dexter Bishop Co. v. B. Redmond & Son, Inc.*, 58 A.D.2d 755, 396 N.Y.S.2d 652 (1977) (specific performance does not preclude a claim for damages) *and Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694 (Mo. Ct. App. 1981) (taking "liberal" approach to code and allowing specific performance even though no absence of legal remedy).

We find the *Sedmak* case particularly instructive both on its facts and on the law. There, Mr. and Mrs. Sedmak were told they could buy a limited edition "pace car" when it arrived at the dealership for the suggested retail price of approximately $15,000. Factory changes were made to the car at the Sedmaks' request before delivery to the dealer. When the car arrived at the dealership the Sedmaks were told they could *bid* on the car, but its popularity had increased the price. The Sedmaks did not bid, but sued for specific performance. The court held that the pace car was not unique in the traditional legal sense, however, its "mileage, condition, ownership and appearance" did make it difficult, if not impossible, to obtain the replication without considerable expense, delay, and inconvenience. The court ordered specific performance even though the legal remedy of damages may have been available to make the Sedmaks "whole".

The *Sedmak* court also addressed the UCC's adoption of the term "in other proper circumstances" and Official Comment 2, RCWA 62A.2-716:[2]

> The general term "in other proper circumstances" expresses the drafters' intent to "further a more liberal attitude than some courts have shown in connection with the specific performance of contracts of sale." § 400.2-716, U.C.C., Comment 1. This Comment was not directed to the courts of this state, for long before the Code, we, in Missouri, took a practical approach in determining whether specific performance would lie for the breach of contract for the sale of goods and did not limit this relief only to the sale of "unique" goods.

(Citation omitted.) *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d at 700.

■ We agree with the *Sedmak* court's interpretation of § 2-716 and, like that court, find the liberal interpretation urged by the UCC drafters to be entirely consistent with the common law of our state. Prior to adoption of the UCC, our cases did not always require the absence of a legal remedy before awarding specific performance nor did these cases require the goods to be absolutely "unique". Hence, the liberal approach to "other proper circumstances" suggested in Official Comment 2, RCW 62A.2-716 is not a departure from our law.[3]

The trial court here expressly relied on *Welts v. Paddock*, 139 Wash. 668, 247 P. 953 (1926). In *Welts*, a car was bar-

---

[2]Official Comment 2 states:

"In view of this Article's emphasis on the commercial feasibility of replacement, a new concept of what are 'unique' goods is introduced under this section. Specific performance is no longer limited to goods which are already specific or ascertained at the time of contracting. The test of uniqueness under this section must be made in terms of the total situation which characterizes the contract. . . . [U]niqueness is not the sole basis of the remedy under this section for the relief may also be granted 'in other proper circumstances' and inability to cover is strong evidence of 'other proper circumstances'."

[3]This distinguishes our situation from the case relied on by Lane, *Klein v. PepsiCo, Inc.*, 845 F.2d 76 (4th Cir. 1988). There, the Fourth Circuit reversed a trial court decision awarding specific performance in the form of damages in the sale of a corporate jet which, as in the instant case, was no longer available. Despite the trial court's finding that the plane was unique, or in the alternative, that the plaintiff's inability to cover with another plane was strong evidence of

gained for but was no longer available, and thus specific performance in the form of the car itself was impossible. Nevertheless, the court held that the trial court correctly awarded specific performance in the form of a judgment for the value of the particular car. *Welts*, 139 Wash. at 669-70.

The decision of the trial court is also supported by the case of *Zastrow v. W.G. Platts, Inc.*, 57 Wn.2d 347, 350, 357 P.2d 162, 360 P.2d 354 (1960), in which the court held that "once a court of equity has properly acquired jurisdiction over a controversy, such a court can and will grant whatever relief the facts warrant, including the granting of legal remedies." In *Zastrow* the prayer for relief not only requested specific performance, but also " 'such other and further relief as to the court seems meet and proper.' " The *Zastrow* court also found significant the fact that it was because of the appellant's own acts in relation to the property that the awarding of specific performance became impractical.

This holding was consistent with the earlier case of *Morgan v. Bell*, 3 Wash. 554, 28 P. 925 (1892). The rule stated by the *Morgan* court was: "[I]f the defendant has by his own act incapacitated himself from performance, the court of equity may, instead of dismissing the plaintiff's suit [for specific performance], award him the legal remedy of damages. Pomeroy on Contracts, § 294." *Morgan*, 3 Wash. at 564.

Nevertheless, Lane claims that King has not met the requirements of § 2-716 because it has not shown an inability to cover. Lane contends that King could have covered by accepting Lane's "as is" proposal of November 4. King's failure to do so, argues Lane, was "commercially unreasonable". Lane cites RCW 62A.1-203, .2-103(1)(b) and the case of *Saboundjian v. Bank Audi (USA)*, 157 A.D.2d 278, 556 N.Y.S.2d 258 (1990)[4]

---

"other circumstances" for purposes of awarding specific performance under § 2-716, the Fourth Circuit held that Virginia's adoption of the UCC did not abrogate the common law rule that specific performance is inappropriate where damages are recoverable and adequate. *Klein*, 845 F.2d at 80.

[4]The *Saboundjian* case dealt with trading in foreign currencies which is covered under the UCC. The bank failed to sell when asked, but the plaintiff waited to see whether the market would rebound, resulting in additional major losses. The court

for the proposition that the buyer has the duty to act reasonably and to mitigate damages. Lane contends that King should have "covered" with the "as is" offer of November 4 and if there were additional repair costs or other expenses, it could have sued for the difference. Furthermore, Lane argues that even if the trial court was correct in finding that King did not have to cover by accepting its November 4 proposal, RCW 62A.2-713 sets forth the measure of damages for a buyer who does not cover — the difference between the market price when the buyer learned of the breach and the contract price. In addition, however, a buyer for resale cannot recover more than his expected profit. Washington comments, RCWA 62A-.2-713; *Allied Canners & Packers, Inc. v. Victor Packing Co.*, 162 Cal. App. 3d 905, 915, 209 Cal. Rptr. 60, 66 (1984) (UCC § 1-106 limits damages under § 2-713 to buyer's expected profit where purchase is for resale).

■ Here, the trial court held in conclusion of law 4 that King was under no obligation to purchase the planes on terms other than as contained in the contract. Specifically, the trial court found that King was under no obligation to accept the new November 4 proposal, which the trial court deemed to be considerably different from the original contract agreement. Lane assigns error neither to this conclusion nor to finding of fact 29 which supports it. Lane has also failed to assign error to that part of conclusion of law 5 stating that plaintiff was unable to "cover" with alternate aircraft, but has only assigned error to the apparent contradiction between finding of fact 39 (airplanes not unique) and conclusion of law 5 (both aircraft are unique).[5] An unchallenged conclusion of law becomes the law of the case.

---

held that because the plaintiff had a duty to act reasonably and to mitigate any damages he may have sustained, the bank could not be held liable for his entire speculative investment. Thus, the damages were limited to the cost of covering or replacing the security at that point in time.

[5]Considering the "other proper circumstances" standard, it is immaterial that the goods may not have been precisely "unique".

*State v. Slanaker*, 58 Wn. App. 161, 791 P.2d 575, *review denied*, 115 Wn.2d 1031 (1990); *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 413, 722 P.2d 861 (1986). Therefore, the findings and conclusions listed above will not be disturbed on appeal.

■ We conclude the trial court properly determined that specific performance was an appropriate remedy here. At the time King commenced its action for specific performance Lane was still in possession of the planes; thus, the court properly acquired equity jurisdiction. The airplanes, although not necessarily "unique", were rare enough so as to make the ability to cover virtually impossible. Furthermore, Lane, by its own act of selling the planes, incapacitated itself from performance. Under these circumstances, the court of equity did not err in finding that "other proper circumstances" were present for issuance of relief under a claim of specific performance under the UCC. The trial court had the discretion to award the legal remedy of damages or other relief deemed just by the trial court. *See Morgan*, 3 Wash. at 564; RCW 62A.2-716(2). For the reasons above, we conclude that under RCW 62A.2-716 and Washington common law the trial court's determination that "other proper circumstances" existed is correct and permitted it to fashion the relief it did.

## II

Next, we address King's cross appeal. King contends that the trial court erred in using lost expectation of profits as the basis for its monetary award, rather than the market value of the planes at the time of trial, or alternatively, the retail value set forth in the blue book, adjusted upward for the planes' special "rareness".

■ King alleges it met its burden of proof as to the market value of the planes at trial. However, it does not cite any authority, or support its contention that because the planes were unavailable, the closest replacement value of them is the value of them *at the time of trial*. As such King is not entitled to consideration of its contention. *See McKee*

*v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989); RAP 10.3(a)(5).[6]

### III

Lane also appeals from what it claims was the trial court's denial of its right to a jury trial. Lane contends that because the trial court ultimately based its theory of recovery on a legal theory of damages, its denial of an earlier request for a jury for the reason that the claim was grounded in equity was erroneous.

Lane demanded a jury trial early in the history of this action. After pretrial rulings precluded King from seeking monetary damages, Lane acknowledged that trial by jury was no longer available because the action was one solely in equity. However, at no time during the trial did Lane formally renew its demand for a jury.

Lane now alleges it was denied its right to a jury trial under Const. art. 1, § 21. That section of the Washington State Constitution provides that "[t]he right of trial by jury shall remain inviolate". In a civil action, a right to a jury trial exists where the action is purely legal in nature. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980); *see also Allard v. Pacific Nat'l Bank*, 99 Wn.2d 394, 399, 663 P.2d 104 (1983). Where the action is purely equitable in nature, however, there is no right to a trial by jury. *Brown*, 94 Wn.2d at 365.

██ The overall nature of a civil action is determined by considering all the issues raised by all the pleadings. *Brown*, 94 Wn.2d at 365. In determining whether a case is primarily equitable or legal in nature, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for a clear abuse. *Brown*, 94 Wn.2d at 368. Here, the pleadings were all in equity. Although the court's remedy is akin to "damages", the jurisdiction and the underlying action were, and continued to be, equitable in nature.

---

[6]Moreover, we note that King does not dispute the fact that UCC § 2-713 clearly mandates a buyer for resale can recover only up to his lost profits. Because this is what the trial court awarded, the trial court did not abuse its discretion in measuring lost profit as the "value" of the damages.

Lane cites *Ziebarth v. Kalenze*, 238 N.W.2d 261 (N.D. 1976) for the proposition that a seller cannot be deprived of his right to a trial by jury unless the buyer is clearly entitled to equitable relief. *Ziebarth*, 238 N.W.2d at 266-67. However, in *Ziebarth* the defendant knew that specific performance was impossible when the complaint was filed. Although he should have known the only recovery would be in damages, he did not ask for a jury trial and the court deemed the right to a trial by jury was thereby waived.

Here, because Lane still had possession of the planes at the time the action was brought, specific performance was possible. Lane acknowledged that the action was in equity and did not press its jury demand. Nevertheless, by the time trial began, it was known that specific performance, in the sense of recovery of the planes, was not going to be possible. Even though in the course of arguing against awarding King a monetary recovery, Lane's counsel reminded the trial court that he had made a jury demand, he did not actually renew his demand and ask the trial court to rule on it. We hold Lane has waived the right to now argue that it had a right to a jury.[7]

### IV

Lane next argues that the trial court erred in awarding attorney fees. It has long been settled in Washington that in the absence of contract language, statute or a recognized ground of equity, a court has no power to award an attorney fee as part of the costs of litigation. *In re J.H.*, 117 Wn.2d 460, 478, 815 P.2d 1380 (1991); *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941).

Here the trial court based its award on its expansive interpretation of the UCC. The trial court held it could award fees to fully compensate King and put it in as good a position as if Lane had performed. We disagree. The UCC does not provide for an award for a prevailing party. *See*

---

[7]Contrary to Lane's claim, *Sunset Pac. Oil Co. v. Clark*, 171 Wash. 165, 169, 17 P.2d 879 (1933) does not hold that a renewed demand during trial preserves a right to a trial by jury. The *Sunset Pacific Oil* case holds the defendant in that case waived the argument because no further jury demand was ever made.

*Hemenway v. Miller*, 116 Wn.2d 725, 742-43, 807 P.2d 863 (1991) (sureties not entitled to attorney fees in UCC action); *see also Michael-Regan Co. v. Lindell*, 527 F.2d 653, 656 (9th Cir. 1975) (Washington law does not authorize recovery of attorney fees under the UCC). The liberal approach advocated by the UCC drafters cannot be read to create inferentially a right to attorney fees. We have consistently retained the "American rule" as to attorney fees, and thus require a clear contract, statutory or *recognized* equitable ground as a basis for such an award. None of these grounds exist here.

Thus, the trial court abused its discretion in awarding attorney fees and the award of attorney fees is reversed.

## V

▉▉▉▉ Lane also contends the trial court erred in awarding prejudgment interest. Prejudgment interest may be awarded on liquidated claims or readily determinable claims. *Douglas Northwest, Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 690, 828 P.2d 565 (1992) (citing *Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986)). A claim is liquidated if it may be readily determined by a fixed standard without the exercise of discretion or reliance on expert opinion. *Douglas Northwest*, 64 Wn. App. at 690; *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968). Each damage claim may be examined separately. *See Douglas Northwest*, 64 Wn. App. at 690-92. The fact that a claim is disputed does not render the claim unliquidated, so long as it may be determined by reference to an objective source. *Aker Verdal A/S v. Neil F. Lampson, Inc.*, 65 Wn. App. 177, 190, 828 P.2d 610 (1992). This rule governs claims for prejudgment interest under the UCC as well. *Hunt-Wesson Foods, Inc. v. Marubeni Alaska Seafoods, Inc.*, 23 Wn. App. 193, 197, 596 P.2d 666 (1979), *review denied*, 93 Wn.2d 1014 (1980).

The requirement that damages be liquidated or determinable limits awards of prejudgment interest to situations where no discretion on the part of the trier of fact is required to determine the reasonable amount of damages. *Hunt-Wesson*, 23 Wn. App. at 197; *see also Hansen v. Rothaus*, 107

Wn.2d at 474-78. In contrast, in those cases where the amount of recovery depends on the findings of fact, prejudgment interest cannot be awarded. *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 449, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992).

Here, the trial court findings indicated alternative grounds for "damages". Besides making a discretionary decision as to which ground to award as the "value", *i.e.*, the lost profit mode, the court considered factors such as the costs of sale, corrosion proofing the engine, and arguably speculation at the "potential" sales prices King would have received. We conclude that with the exception of the $10,000 good faith deposit held by Lane, the damages were neither liquidated nor determinable and therefore prejudgment interest does not lie.

As such, we reverse and remand this issue to the trial court for recalculation of prejudgment interest based only on the $10,000 good faith deposit.

The decision of the trial court is affirmed in part and reversed in part and remanded to the trial court for proceedings consistent with this opinion.

GROSSE and AGID, JJ., concur.