IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LEGACY CONSTRUCTION GROUP, LLC, | No. 85837-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| NEVIN AND YAVUZ DRAMAN, | UNPUBLISHED OPINION |
| Appellants. | |

CHUNG, J. — Nevin and Yavuz Draman appeal from the judgment entered against them following a bench trial. The Dramans challenge numerous findings of fact and conclusions of law and assert that the trial court should have entered judgment in their favor. We disagree and affirm.

FACTS

Nevin and Yavuz Draman are a married couple. In 2018, Yavuz[1] purchased a residential property located in Redmond, Washington. Mindful Senior Care LLC (MSC) is a Washington limited liability company owned by Nevin and formed for the purpose of renovating the Redmond property into an adult family home to provide elderly clients with residential care. Nevin worked on creating a renovation plan that would allow for the Draman family, along with six

---

[1] Because the Dramans share a last name, we refer to them by their first names for clarity. We intend no disrespect.

patients and a caregiver, to reside in the home. The plans drawn up by Nevin and architect James Raptis called for the house to be divided into eight bedrooms and nine bathrooms. Two bedrooms and one bathroom were to be built in an area of the house that was initially an attached garage. This was the only area of the house that did not have a crawlspace, but instead had a concrete slab on grade.

Nevin reached out to Legacy Construction Group LLC to carry out the renovation plans. Legacy Construction is a licensed general contractor owned and operated by Arcenio Contreras. After discussing the project with Nevin and reviewing the plans, Legacy Construction prepared a proposed construction agreement. Nevin took the proposed agreement and edited it into two documents, dividing the scope and price to create a "General Remodeling" contract and a "Painting and Flooring" contract. Both documents had a deadline for completion of the work in May 2019, with a "grace period for remediation" in June 2019. The cost for the project under the combined documents was $115,000 plus tax, for a total of $126,500. The parties signed both documents on February 7, 2019, and MSC made a $10,000 down payment. MSC paid an additional $30,000 on February 21, 2019, and $40,000 on April 5, 2019.

The first work that Legacy Construction performed on the project was to break up the old concrete slab in the garage. As it began excavating, Legacy Construction discovered that part of the existing foundation walls did not go down deep enough to be able to create a crawlspace. To build the floor as planned, the entire foundation would have to be reconstructed. After consulting with her

engineer, Nevin concluded that the cost to reconstruct the foundation was prohibitive and agreed to proceed with Legacy Construction's suggestion to construct a concrete slab on grade with an insulated floor. Legacy Construction agreed to perform the change in design at no additional cost. However, the change in design added approximately one month to the project schedule.

During this time, Nevin became progressively more upset and aggressive with Legacy Construction, threatening to harm it financially or see its reputation tarnished. As time went on, Nevin became more abusive, ill-tempered, and condescending in her daily treatment of Contreras and his employees, accusing them of not doing their work properly. Each time Nevin accused Legacy Construction of doing something wrong, it had to stop its work, address the concern, and attempt to work out a resolution that met Nevin's demands. These delays continued to extend the overall time line out further than contemplated in the contract.

The delays led to worse behavior by Nevin, to the point that her actions made it impossible for Legacy Construction to complete the work in a timely manner. Nevin began to refer to Contreras as "stupid" and "naïve" and threatened to kill him with a knife. The threats turned physical when on May 9, 2019, Nevin grabbed and pulled Contreras by his shirt. She then picked up a sharp tool and, in front of Contreras and his employees, struck a door multiple times so hard that it went through the door in two locations. Contreras called the police and Legacy Construction stopped work on the project.

3

Legacy Construction and the Dramans eventually reached an agreement for the project to be completed, and Legacy Construction returned to the project site. In the interim, the Dramans hired other workers to take over portions of the project. Although Nevin frequently threatened to cancel the contract with Legacy Construction, she never clearly did so. Legacy Construction completed all of the contract work (aside from that performed by the Dramans' new hires) by the end of July 2019 and received all inspection approvals from the City of Redmond (City).

On August 23, 2019, Legacy Construction issued its final invoice to MSC, in the amount of $37,263. This amount consisted of the $46,500 unpaid remainder of the contract price, minus $13,145 in credit for work performed by the Dramans' other hires, plus $3,908 in additional work. After the Dramans refused to pay, Legacy Construction filed a lien against the property.

Legacy Construction then filed suit against MSC and the Dramans for breach of contract and foreclosure on the lien. The court conducted a bench trial on the parties' claims[2] beginning on March 27, 2023.

Following trial, the court conducted a presentation hearing and delivered its oral ruling in favor of Legacy Construction. The court then circulated its proposed findings and conclusions to the parties, offered the parties the opportunity to object, and allowed Legacy Construction to submit a final fee declaration. Legacy Construction had no objection to the court's findings and

---

[2] The Dramans asserted various defenses and counterclaims, the nature of which are not part of the record on appeal.

conclusions. The Dramans, on the other hand, filed over 100 pages of objections. The trial court determined that the Dramans' objections "contest[ed] the Court's credibility determinations," "contest[ed] the overall result," "attempt[ed] to reargue the merits of the case in full including numerous arguments not made at trial or supported by the trial record," and "cite[d] substantially to new evidence or evidence that was not admitted at trial." The trial court declined to modify its findings or conclusions based on the objections.

The trial court entered a judgment in favor of Legacy Construction in the principal amount of $33,355.00, plus prejudgment interest, costs, and attorney fees. It also ordered that Legacy Construction's lien be foreclosed and the property sold by the King County Sheriff. In conjunction with the judgment and order, the trial court entered detailed findings of fact and conclusions of law.

The Dramans appeal.[3]

## ANALYSIS

### I.     Standards of review

As a preliminary matter, we note that the Dramans represent themselves on appeal. While we recognize the difficulties of self-representation, " 'the law does not distinguish between one who elects to conduct his or her own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.' " In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting In re Marriage of Wherley, 34 Wn. App. 344,

---

[3] A commissioner of this court dismissed MSC as a party on appeal because it was not represented by counsel.

349, 661 P.2d 155 (1983)). In other words, we hold pro se litigants to the same standards as attorneys. Id.

A party challenging a finding of fact must make a separate assignment of error for each finding they believe was improperly made and must reference each finding by number. RAP 10.3(g). Failure to assign error to a finding of fact results in that finding becoming a verity on appeal. In re Est. of Lint, 135 Wn.2d 518, 532-33, 957 P.2d 755 (1998); Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407, 858 P.2d 494 (1993). Similarly, failure to assign error to a conclusion of law renders the conclusion the law of the case. Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014) (citing King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716, 846 P.2d 550 (1993)).

"When reviewing a trial court's findings of fact and conclusions of law following a bench trial, we determine 'whether the findings of fact are supported by substantial evidence and whether those findings support the conclusions of law.' " Chiu v. Hoskins, 27 Wn. App. 2d 887, 892, 534 P.3d 412 (2023), review denied, 2 Wn.3d 1018, 542 P.3d 569 (2024) (quoting 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 705, 281 P.3d 693 (2012)). "Substantial evidence to support a finding of fact exists where there is sufficient evidence in the record 'to persuade a rational, fair-minded person of the truth of the finding.' " Hegwine v. Longview Fibre Co., 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting In re Est. of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004)).

"As an appellate tribunal, we are not entitled to weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in

either regard." In re Welfare of Sego, 82 Wn.2d 736, 739–40, 513 P.2d 831 (1973). "Even where the evidence is conflicting, we need determine only whether the evidence most favorable to the respondent supports the challenged findings." Miller v. Badgley, 51 Wn. App. 285, 290, 753 P.2d 530 (1988); see also Herdson v. Fortin, 26 Wn. App. 2d 628, 637, 530 P.3d 220 (2023), review denied, 2 Wn.3d 1009, 539 P.3d 7 (2023) (" '[W]e will not substitute our judgment for the court's' even if this court might have reached a different result.") (quoting Parkridge v. City of Seattle, 89 Wn.2d 454, 464, 573 P.2d 539 (1978)).

## II. Determination of contractual obligations

In their first assignment of error, the Dramans assert that the trial court erred by treating the two documents signed by Legacy Construction as one contract rather than two separate contracts. But here, the trial court specifically found that there were two contracts. First, it found that while Legacy Construction presented the proposed agreement to Nevin as one document, Nevin then edited it into two documents. The trial court further found that Nevin split the agreement into two "smart contracts" in order to avoid paying all the profits to Legacy later.[4] The Dramans did not separately assign error to any of these findings.

Nor did the trial court err to the extent it treated the documents as a single contract in analyzing the breach of contract claims. The Dramans claim the court

---

[4] This finding is directly supported by the testimony of Deborah Bartel, a woman who lived with the Dramans while the project was ongoing, who testified that Nevin "told me that she had two contracts with [Contreras] . . . she called them two smart contracts, and she arranged it that way so that she wouldn't have to pay all the profit later, is what she told me." The trial court found Bartel credible, and we defer to the trial court's finding. See Seattle Police Dep't v. Jones, 18 Wn. App. 2d 931, 945, 496 P.3d 1204 (2021) (appellate court defers to finder of fact on witness credibility).

erred in stating "the parties ultimately agreed to continue *the contract*," whereas MSC had cancelled the contract for painting and flooring and continued only the remodeling contract. A contract may consist of multiple documents. Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). "Instruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract." Turner v. Wexler, 14 Wn. App. 143, 146, 538 P.2d 877 (1975) (citing Am. Pipe & Constr. Co. v. Harbor Constr. Co., 51 Wn.2d 258, 265, 317 P.2d 521 (1957)); see also RESTATEMENT (SECOND) OF CONTRACTS § 202 (AM. LAW INST. 1981). The trial court found that both agreements were between the same parties, concerned construction work at the same location, contained the same completion deadline, and were signed on the same date. Thus, the agreements could be properly read and construed together as one contract.

III.     Validity of foreclosure lien

In their second assignment of error, the Dramans assert that the trial court erred by concluding that Legacy Construction was entitled to a decree of foreclosure because its claim of lien was legally void for failure to give notice. Legacy Construction asserts that this argument was not raised in the trial court and, therefore, the Dramans have waived it. We agree that the Dramans have waived this argument.

A trial court may decline to consider any new theory presented for the first time in a motion for reconsideration. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005); JDFJ Corp. v. Int'l Raceway, Inc., 97

Wn. App. 1, 7, 970 P.2d 343 (1999). A court does not abuse its discretion solely by refusing to consider new theories raised for the first time in a request for reconsideration. River House Dev. Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 231, 272 P.3d 289 (2012).

The first time the Dramans argued that Legacy Construction's claim of lien was void for failure to provide notice under RCW 60.04.031 was in their initial objections to the trial court's proposed findings of fact and conclusions of law.[5] In its findings and conclusions, the trial court noted that the Dramans' "objections" effectively constituted a motion for reconsideration, as it contested the court's credibility determinations, contested the overall result, and attempted to reargue the merits of the case. The court recognized that the "objections" made "numerous arguments not made at trial or supported by the trial record." The court expressly refused to consider these new arguments and declined to modify its findings and conclusions.

Because the Dramans did not argue that Legacy Construction's lien was void for lack of service before their post-trial motion and because the trial court refused to consider it, we deem this argument waived.

IV.    Legacy's compliance with its contractual obligations

In their third assignment of error, the Dramans assert that finding of fact 38 is not supported by sufficient evidence because Legacy "breached contracts and broke laws" by not obtaining several required permits. We disagree.

---

[5] Nothing in the record, including the Dramans' pretrial brief, indicates that they asserted this claim prior to trial.

Finding of fact 38 states in its entirety, "Legacy obtained all of the necessary permits for the work, including framing, electrical, and plumbing (Exs. 8-11, 13, 14, 245-249). Legacy ultimately successfully received all inspection approvals from the City of Redmond."

The Dramans claim that Legacy lied to them and to the City, that the City should not have issued any permits to Legacy Construction, and that Legacy Construction was performing unlicensed work. These assertions are based either on facts not in the record or on an interpretation of the evidence with which the trial court did not agree. This court will not and cannot reassess the weight of the evidence presented to the trial court. Sego, 82 Wn.2d at 739–40.

Instead, the record contains Exhibits 8 through 11, which consist of permits issued by the City for electrical work, duct work, and plumbing. Exhibit 13 is a permit issued by the City for the installation of exhaust fans and Exhibit 14 is a permit issued by the City to change the location of the drain pipe in the crawl space, along with a credit card receipt showing that the permit application was paid for. The record on appeal contains no objection to the admission of these exhibits.

Other evidence also supports finding of fact 38. Raman Singh, the owner of Legacy Construction's plumbing subcontractor, testified that he had all of the permits necessary for his work on the project and passed all required inspections. Contreras also testified that Legacy Construction obtained all the necessary permits for plumbing, electrical, and mechanical work, and that all work fell within the scope of those permits. Contreras further testified multiple

10

times that the project passed the City's inspections. Thus, there is substantial evidence to support finding of fact 38, that Legacy Construction obtained all of the necessary permits for the project.

The Dramans also contend that Legacy Construction acted in bad faith and breached the contract in a myriad of ways, citing to a number of trial exhibits as proof of the alleged breaches. "Generally, where a trial court does not make a finding of fact, we presume a finding against such fact. It is not a function of this appellate court to speculate whether the trial court would have made the findings argued by [the appellant]." Recreational Equip., Inc. v. World Wrapps Nw., Inc., 165 Wn. App. 553, 565, 266 P.3d 924 (2011). The trial court concluded that Legacy had substantially complied with its obligations under both contracts. The trial court did not find that Legacy Construction acted in bad faith or that it materially breached any contract between the parties. We presume the absence of such findings was intentional, and we will not speculate about whether the trial court should have found otherwise.

### V. Reasons for delay

The court concluded that Nevin's actions breached both contracts and preempted claims for delay damages by the Dramans or any claim that Legacy was not owed payment for its work due to delay. The Dramans raise several challenges to findings underlying these conclusions. Specifically, the Dramans assert that the evidence does not support the trial court's findings that the delay in the project was attributable to an unforeseen issue with the garage foundation, rather than to Legacy Construction. We disagree.

The Dramans assign error to findings of fact 17, 18, and 19, claiming that these findings were not supported by expert evidence that constructing a new concrete slab would take longer and be more expensive than the original planned crawl space. But no such specific evidence was necessary to support these findings that the changes in the plan caused delay.

The Dramans also assert that the trial court erred by concluding that Nevin's actions breached both contracts. Specifically, the Dramans contend that findings of fact 24 through 29 are not supported by the evidence because "Legacy's witnesses were not credible and they were intentionally trying to distort the truth." Br. of Appellant, at 26. Because this court does not "reassess the credibility of trial court witnesses," Garza v. Perry, 25 Wn.App.2d 433, 453, 523 P.3d 822 (2023), the Dramans' argument is without merit.

The Dramans also claim that the court confused the chronology of events in findings of fact 17, 25, 26, 27, 29, and, thus, erred by concluding Nevin was the cause of the delay in the project's completion. The Dramans do not specify in what way they challenge these findings other than the conclusion about the cause of delay. The Dramans assert that in finding of fact 17, the trial court implied that Nevin's hostile e-mails to Legacy Construction predated the change in construction plans for the garage, when Exhibits 213 and 214 demonstrated that the change in construction plans occurred first. Finding of fact 17 reads:

> Ms. Draman became very upset about the garage foundation issue, and she grew more angry over time. She tried to blame Legacy for the issue, even though Legacy discovered the issue in the normal course of its work and did not create the problem. Ms. Draman began to accuse Legacy of improperly trying to deviate from the Plans and threatened to cancel the contract and find another

> contractor to take over her project (Ex 214, Page 1). Though Legacy correctly pointed out that the problem was with the foundation walls not being deep enough, Ms. Draman argued "there is no issue with my home. The issue is with your attitude." (Ex 214, Page 2). Despite Ms. Draman's attempts to blame Legacy, Legacy continued in good faith and procured a design from the project architect, James Raptis, for the slab on grade solution (Ex 213).

Contrary to the Dramans' claim, finding of fact 17 does not suggest that the trial court misinterpreted the timeline of events. Rather, the trial court found that Legacy Construction continued to work on the project despite Nevin's hostility. The Dramans do not articulate how the dates of the exhibits have any material effect on this finding.

The Dramans also assert that the trial court misconstrued the chronology of events because Deborah Bartel was not present at the property for the first three months of the project and therefore could not have testified credibly. Because this court does not reassess the credibility of witnesses, Garza, 25 Wn. App. at 453, the Dramans' argument does not demonstrate any error by the trial court.

Moreover, other findings to which the Dramans do not assign error support the trial court's conclusion that the Dramans, not Legacy Construction, were responsible for the delay. Specifically, they do not challenge finding of fact 15, which reads as follows:

> As Legacy removed the concrete slab and began excavating, however, Legacy discovered a problem. [Footnote omitted.] The Plans called for a crawlspace to be dug out and an elevated floor system to be constructed and attached to the existing foundation walls. In the location where the old garage entrance used to be, however, the existing foundation walls (and the footings supporting them) did not go down deep enough. The shallow depth of the foundation did not allow enough space to create room for the new

13

> crawlspace. To build the new floor as planned (with a crawlspace), the foundation running under the garage walls would have to be reconstructed so that the foundation went significantly deeper. That would entail substantial additional work and expense.

And the Dramans did not assign error to finding of fact 20, that "[a]s time went on, Ms. Draman became more and more abusive, ill-tempered, and condescending in her daily treatment of Mr. Contreras and his crew. She accused them of not doing their work properly without a good faith basis to do so." The Dramans also did not assign error to finding of fact 24:

> Each time Ms. Draman accused Legacy of doing something wrong, Legacy had to stop its work, address the concern, and attempt to work out a resolution that met Ms. Draman's demands. These delays continued to extend the overall project time-line out further than was originally contemplated in the Contracts. This, in turn, led to worse and worse behavior by Ms. Draman, to the point that Ms. Draman's actions made it impossible to complete the contract in a timely manner.

These unchallenged findings support the court's determination that the delays in the project were not attributable to Legacy Construction. The Dramans' argument to the contrary asks us to reweigh the evidence, which we will not do.

VI.     Discovery of garage foundation issue

In their sixth assignment of error, the Dramans assert that Legacy Construction discovered the issue with the garage foundation before the contracts were signed and that they were thus "tricked" into signing the contract. A footnote in finding of fact 15 states, "Despite allegations at trial that Legacy knew about this issue sooner, the evidence did not support that assertion. Mr. Contreras credibly testified that he learned of the issue during the excavation. Ms. Draman's testimony to the contrary was speculation." Thus, the trial court

14

specifically rejected the argument the Dramans make here. As the Dramans failed to assign error to this finding, it is a verity on appeal, and their argument on this issue fails.

VII.    Credibility of Respondent's expert

The Dramans also assert that the trial court erred by finding Legacy Construction's expert witness to be credible. It is the appellant's responsibility to provide a record sufficient for this court to review its claims of error. State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012). The Dramans did not provide the trial testimony of either expert witness. Even if the Dramans had provided an adequate record for review, we will defer to the trial court on its findings of witness credibility. Seattle Police Dep't v. Jones, 18 Wn. App. 2d 931, 945, 496 P.3d 1204 (2021). We decline to further consider this assignment of error.

VIII.    Calculation of damages

The Dramans assert that the trial court erred in its calculation of damages in several regards. These arguments are unavailing.

First, the Dramans assert that the trial court erred in its calculation of damages because they canceled the painting and flooring contract, and, thus, Legacy Construction was not owed any payment under it. But the Dramans did not assign error to finding of fact 37, in which the trial court explicitly found that "Ms. Draman threatened to cancel the Painting and Flooring Contract, but she never clearly did so." The court also found that "Legacy installed most of the flooring, with the exception of the living room and kitchen area," and "performed

most of the painting work." Because the Dramans did not assign error to finding of fact 37, we treat the finding as true. See Lint, 135 Wn.2d at 532-33. Further, because the Dramans never canceled the painting and flooring contract, even if they hired others to do some of the work, they still owed Legacy Construction payment for the work Legacy did pursuant to the contract. In its final invoice, Legacy subtracted its costs avoided regarding work that others performed, totaling $13,145.

Next, the Dramans contend that Legacy Construction did not remit sales tax to the government and did not timely issue accurate invoices to MSC. They also contend that they are entitled to damages due to the rupture of a sewer pipe. The trial court did not make any findings that Legacy Construction failed to pay taxes, that its invoices were inaccurate, that it did not timely issue invoices to MSC, or that it otherwise committed any act that would excuse the Dramans from paying the amount remaining under the original contract, minus costs for work performed by other parties. The trial court also did not find that Legacy Construction caused the rupture of the sewer pipe or would otherwise be financially responsible for the repair work. It is not the role of the appellate court to make factual findings in the trial court's stead. Recreational Equip., 165 Wn. App. at 565. In light of the lack of any findings to support the factual basis for Dramans' arguments, we conclude that the Dramans have not demonstrated any error in the trial court's calculation of damages.

16

IX.     Fees on appeal

The Dramans request an award of attorney fees on appeal. RAP 18.1 allows us to award reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover" such attorney fees or expenses. The Dramans did not devote a separate section of their brief explaining their right to recover fees as required by RAP 18.1(b). Accordingly, the Dramans are not entitled to fees.

Legacy Construction also requests an award of attorney fees pursuant to RAP 18.1, the terms of the contract, and RCW 60.04.181(3). RCW 60.04.181(3) states that the court may award the prevailing party in an action to foreclose a construction lien "as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the . . . court of appeals . . . as the court or arbitrator deems reasonable."

We award Legacy Construction reasonable fees in responding to this appeal under RCW 60.04.181(3) and RAP 18.1, contingent upon its compliance with the procedural requirements of the RAPs.

We affirm.

Chung, J.

WE CONCUR:

Coburn, J.

Mann, J.